STATE OF TEXAS V. J. A. ORTIZ ET AL.

No. 1472. Decided February 12, 1906.

**1.—Laws of Spain—Expropriation—Compensation to Owner.**

By the laws of Spain the expropriation of property previously granted by the government, for the purpose of establishing a town thereon, could only be accomplished by compensating the owner for the land so taken. (P. 484.)

**2.—Same—Judgment—Recitals—Res Adjudicata.**

The recitals in a judgment in a suit against the State to recover a tract of land granted to those under whom plaintiff claimed title by the Kingdom of Spain, which showed that such grant was made, but that a certain part of the same was subsequently expropriated by the government for the purpose of establishing a town thereon, and the owner compensated by receiving a certain tract of land adjoining the original grant, as the basis for a judgment by which the plaintiff recovered only so much of the tract sued for as was not so expropriated, were of matters necessary to a determination of that case, and were evidence, in a subsequent suit by the State to recover against those claiming, in privity from such plaintiff, said adjoining tract, of the grant of same by

the Kingdom of Spain, as compensation for the land expropriated by it, as re-
cited in such judgment, though not conclusive as to what particular lands were
granted as such compensation, since that question was not necessary to the
determination. (Pp. 484, 485.)

### 3.—Presumption of Grant.

Evidence of possession and long continued claim of lands granted by
the Kingdom of Spain, considered and held sufficient to authorize a presump-
tion of such grant, in support of the authority of the officers of the State who
had subsequently issued patent therefor to the claimants, which patent the State
here sought to cancel. (Pp. 485–487.)

### 4.—Case Followed—Judgment—Jurisdiction—Statute Expiring by Its Terms.

Suit under the Act of February 11, 1860, for adjudicating certain claims
for land against the State was a special proceeding in which the district court
had no authority except to proceed as authorized in the act. Such law of
1860 expired by its own limitation in 1865; and the court had no power to
set aside, in 1872, its judgment rendered under said Act in 1860, and render a
new judgment for the recovery of land under such Act. State v. O'Connor, 96
Texas, 484, followed. (P. 487.)

Error to the Court of Civil Appeals for the Third District, in an
appeal from Travis County.

The state sued to cancel the patent under which defendants, Ortiz
and others, claimed the land in controversy. Plaintiff had judgment.
On defendants' appeal the judgment was reversed and rendered in their
favor. The state then obtained writ of error.

*R. V. Davidson*, Attorney-General, and *T. S. Reese* and *W. E. Hawkins*,
Assistants, for plaintiff in error.—In 1887 a patent was issued to the
heirs and assigns for Balconcitas, based as recited in the patent, on this
decree of confirmation in the District Court of Webb County, on March
13, 1872, which in its petition in this cause the state prayed should be
cancelled.

A patent issued without authority is absolutely void. Kempner v.
State, 72 S. W. Rep., 888.

The judgment of the District Court of Webb County, of date March
13, 1872, was absolutely void. State v. O'Connor, 96 Texas, 484.

The patent, if issued without authority, was void, and the defendant
was entitled to recover the land regardless of whether a patent had been
illegally issued for it or not. Rev. Stat., art. 3351.

The court did not err in adjudging plaintiff the land sued for. The
evidence in the case showed clearly that the plaintiff was entitled to
recover the land. State v. O'Connor, 96 Texas, 484.

The sufficiency of the evidence in this case has been passed upon by
the Supreme Court in the case above quoted, and consequently it is
unnecessary to argue it further.

There can be no estoppel as against the state. Saunders v. Hart,
57 Texas, 10; Kempner v. State, 72 S. W. Rep., 888.

In all the cases involving the doctrine of presumption of a grant in
our own reports there has been some evidence of the actual grant. The
case at bar will be found to be singular, in that there is not a scintilla of
evidence of the actual existence of the grant, and not a shred of evidence

as to the actual existence at any time of any actual written documents evidencing such grant.

We think an examination of the following authorities, in connection with those already cited, will convince the court that the facts in the record do not authorize a presumption of a grant of the land sued for. Without this presumption, of course, appellants have no title: 2 White's Land Laws in California, Oregon and Texas, p. 562; Paschal v. Dangerfield, 37 Texas, 305; Crespin v. United States, 168 U. S., 208; Hayes v. United States, 170 U. S., 637; Hays v. United States, 175 U. S., 248; Chavez v. United States, 175 U. S., 552; Burgess v. Gray, 16 Howard, 61; Truehart v. Babcock, 49 Texas, 260; Manchaca v. Field, 62 Texas, 140; Texas Mexican Ry. Co. v. Uribe, 85 Texas, 390; Simmons Hdw. Co. v. Kaufman & Runge, 77 Texas, 137; Wells v. Yarborough, 84 Texas, 663; Craig & Ogden v. Marx & Kempner, 65 Texas, 654.

When the wheat is sifted out of the chaff in the voluminous evidence in the record, it will be found that there is no evidence of a grant to the tract of 32 leagues awarded to defendants in error, except the recitals in the judgment of 1862, that Garza "for said condemnation was reimbursed in land lying above the town and jurisdiction of Palafox," and the vague and indefinite testimony of witness as to the possession and claims of Santiago De La Garza and others.

We submit that the recital, with reference to this grant, in the judgment of 1862, being a recital of an immaterial and incidental fact, proves nothing. (1 Green. Ev., sec. 528; Sheffield v. Goff, 65 Texas, 354-358; People v. Johnson, 97 Am. Dec., 770.) This evidence should not have been considered at all.

The recitals in the void judgment of 1872, we assume, can not be considered for any purpose.

*Gano, Gano & Gano, Bethel Coopwood, E. A. Atlee, L. A. Hill, Paschal & Ryan* and *J. F. Mullaly,* for defendants in error.—The Act of April 4, 1881, being a legislative grant of all the lands embraced by its terms, authorizing and requiring the issuance of patents therefor, and, as shown by the averments of plaintiff's petition, the land in question having the circumstances required by the act to bring it within the remedy, no exception not stated in the act can exclude the land from its benefit; and the spirit of the act must be gathered from the words of the act and not from conjecture aliunde; and though conferring no rights per se, the judgment of March 13, 1872, existing as a fact upon the records of the proper court when the remedial act was passed, sufficed as an earmark referred to for identification of the land confirmed. Turner v. Rogers, 38 Texas, 582; Grimes v. Bastrop, 26 Texas, 316; Lewis v. San Antonio, 7 Texas, 309; Causici v. Lacoste, 20 Texas, 285; Grant v. Wallis, 60 Texas, 352; Laughter v. Seela, 59 Texas, 183; Cobbs v. Coleman, 14 Texas, 599; Allison v. Brookshire, 38 Texas, 401; Westrope v. Chambers, 51 Texas, 187; Summers v. Davis, 49 Texas, 554; Truehart v. Babcock, 51 Texas, 177; Higgins v. Rinker, 47 Texas, 401; Russell v. Farquhar, 55 Texas, 260; Sneed v. Falls Co., 91 Texas, 170; Read v. Levy, 30 Texas, 742; Dobson v. Bunton, 81 Texas, 658, 659; State v. Kroner, 2 Texas, 493; Johnson v. Taylor, 60 Texas, 360;

Gulf, C. & S. F. Ry. Co. v. Warren, 89 Texas, 479; Roberts v. Yarboro, 41 Texas, 222; Collins v. Warren, 63 Texas, 315; Thompson v. Buckley, 1 Texas, 35; Act of March 31, 1883, Gen. Laws, 1883, p. 38; Act of September 3, 1901, sec. 7; Neil v. Keese, 5 Texas, 32; Bryan v. Sundberg, 5 Texas, 424; Cannon v. Vaughan, 12 Texas, 402; Cain v. State, 20 Texas, 362; Selman v. Wolfe, 27 Texas, 72; Hanrick v. Hanrick, 54 Texas, 108; Cameron's Excrs. v. State, 95 Texas, 545; Harrold v. Arrington, 64 Texas, 233; Guadalupe Co. v. Wilson Co., 58 Texas, 228; Strother v. Lucas, 12 Peters, 454; Chouteau v. Eckhart, 2 Howard, 372; Terrett v. Taylor, 9 Cranch, 50; Wilkinson v. Leland, 2 Peters, 657-662; Field v. Seabury, 19 Howard, 323-333; Charles River Bridge v. Warren Bridge, 11 Peters, 589; Martin v. Waddell, 16 Peters, 411; McArthur's Heirs v. Dun's Heirs, 7 Howard, 271; Gardner v. Collins, 2 Peters (U. S.), 93; Brewer v. Ugher, 14 Peters, 198; Doe v. Considine, 6 Wall. (U. S.), 458; Priestman v. United States, 4 Dall. (U. S.), 28; Hadden v. The Collector, 5 Wall. (U. S.), 107; Fletcher v. Peck, 6 Cranch, 137; United States v. Arredondo, 6 Peters, 691; Foster v. Neilson, 2 Peters, 254; Washburn on Real Prop., vol. 3, pp. 190-192; Commonwealth v. Pejepscut Props., 10 Mass., 155; Hyman v. Read, 13 Cal., 444; Commonwealth v. Roxbury, 9 Gray, 492; Tynan v. Walker, 35 Cal., 634; Koch v. Bridges, 45 Miss., 259; Woodbury v. Berry, 18 Ohio State, 462; State Bank v. Morris, 13 Ark., 291; Pryor v. Ryburn, 16 Ark., 671; Am. and Eng. Ency. of Law, vol. 3, p. 303; Sutherland on Stats., p. 294, sec. 222, and p. 417, sec. 331; Potter's Dwarris on Statutes, 145; Alexander v. Worthington, 5 Maryland, 485; W. U. Telegraph Co. v. Hewet (D. C., 1886), 2 Cent. Rep., 694; Smith v. State, 66 Maryland, 215; Newell v. People, 7 N. Y., 97; Rothes v. Kirkcaldy, 7 App. Cas., 702; Coe v. Lawrence, 1 El. & Bl., 516; 72 E. C. L., 516; Hall v. Wyboum, 2 Salk., 420; Dame's Appeals, 62 Pa. St., 417; Butler Co. v. Leibold, 107 Pa. St., 407; Harrington v. Smith, 28 Wis., 60; Collins v. Carman, 5 Maryland, 505; Jones v. Jones, 18 Maine, 308; Torrance v. McDougals, 12 Ga., 530; I Kent (11th ed.), 505.

The plaintiff being a party to the suit in which the judgment of January 8, 1862, was rendered, is bound by the finding therein that the land given in lieu of the expropriated land was above the town; and is further bound by the action of the legislature adopting the report of the joint committee on the subject, that the land so given to Garza was called Balconcitos and above and adjoining the land involved in said suit; and the circumstances proved, showing the identity of the land above and adjoining the Palafox tract and the demanded premises in this action not only repels the plaintiff's claim of title, but shows the land was individual property, and entitled defendants to recover.

It was competent for the legislature to provide that before patent should issue to the confirmees, the exact limits of their confirmations should be ascertained by a survey executed by authority of the state, and when the survey was made and the field notes approved and recorded by the district surveyor, and recognized as valid and correct on the map of Webb County for patent by the general land office, it bound the parties to it, the confirmees and the State of Texas; and neither side can be heard to deny that the land embraced by the field notes is

the precise tract presented by Santiago de la Garza to the Miller and Bourland commission and so confirmed by the Act of 1852. West v. Cochran, 17 Howard, 415; Menard's Heirs v. Massey, 8 How., 313.

Lands granted by the authorities of Spain to individuals in the province of Coahuila before the independence of Mexico did not pass in fee to the United States, or the State of Texas, under the treaty of cession by which that section of territory was acquired by the United States, but the rights of individual property therein were protected and confirmed by the terms of such treaty and the law of nations; and it was competent to prove the lost concession to Garza by circumstantial evidence. State v. Cuellar, 47 Texas, 35; Herndon v. Casiano, 7 Texas, 335; Lewis v. San Antonio, 7 Texas, 314; Kinney v. Vinson, 32 Texas, 126; Bounds v. Little, 75 Texas, 321; Daniels v. Creekmore, 7 Texas Civ. App., 577; Crain v. Huntington, 81 Texas, 614; Soulard v. United States, 4 Peters, 811, and 10 Peters, 100; Strother v. Lucas, 12 Peters, 410; United States v. Kingsley, 12 Peters, 476; United States v. Purcheman, 7 Peters, 85-88; Leitensdorfer v. Webb, 20 Howard, 176; United States v. Arredondo, 6 Peters, 741, 742; Mitchell v. United States, 9 Peters, 711; Treaty of Guadalupe Hidalgo, arts. 8, 9.

The judgment of the District Court of Webb County in cause No. 14, being rendered by a court having lawful jurisdiction of the parties and of the subject-matter, and the two issues properly before it being each tried upon its merits, every matter that could have been adjudicated in either was before the court and is concluded by the judgment; and the condition precedent to the expropriation being that Garza should have been indemnified for his property in the land taken from him, without which he could not have been divested of his title, it was necessary for the court to determine that he was paid for it, in one of the two ways provided by law, before adjudging that his property was condemned and taken from him and vested in the crown; and the judgment that it was taken from him and that he was indemnified in lands above the town was binding upon both parties. O'Connor v. State, 96 Texas, 492; Johnson v. Murphy, 17 Texas, 218; Foster v. Wells, 4 Texas, 104; Lee v. Kingsbury, 13 Texas, 70; Hatch v. Garza, 22 Texas, 187; Chilson v. Reeves, 29 Texas, 281; Teal v. Terrell, 48 Texas, 508; Brown v. Renfro, 63 Texas, 602; James v. James, 81 Texas, 381; Freeman v. McAninch, 87 Texas, 132; Escriche, Verbos, Enagenacion Forzosa, Exproriacion, and Bienes Particulares; Law 2, title 1, part 2, Codigos Españoles, vol. 2, p. 320; Law 31, title 18, part 3, Codigos Españoles, vol. 3, p. 200.

The issue upon which the former judgment is here brought to bear was material in the former action to establish the expropriation in favor of the State of Texas, and was necessarily determined in her favor and it is not necessary to the conclusiveness of the judgment that issue should have been taken upon the precise point, but is sufficient that the point was essential to the judgment upon the issue as to the expropriation. Cook v. Burnley, 45 Texas, 115; Wright v. Wright, 7 Texas, 526; Lee v. Kingsbury, 13 Texas, 71; Tadlock v. Eccles, 20 Texas, 791; Oldham v. McIver, 49 Texas, 871.

The Spanish law presumed that when the owner carries his negligence

to the extreme of not claiming nor making use of his rights in so long a time, that he has abandoned, ceded or alienated them in fact, making the presumption absolute upon the completion of the term prescribed, that is, ten years between persons present, and twenty years between the absent. Ballard v. Perry, 28 Texas, 366; Grimes v. Bastrop, 26 Texas, 312; Paul v. Perez, 7 Texas, 341; Galan v. Goliad, 32 Texas, 787; Jones v. Borden, 5 Texas, 413; Lewis v. San Antonio, 7 Texas, 308; Herndon v. Casiano, 7 Texas, 335, 336; Barclay v. Howell's Lessees, 6 Peters, 498; Laws 11 and 12, title ·30; 18, 19 and 21, title 29; and 11, title 28, Partida 3, Codigos Españoles, tom. 3.

The doctrine of estoppel applies as well to the state as to private persons, and arises in those cases in which the act sought to be made binding was done in her sovereign capacity, i. e., done through the legislature by enactment, resolution or otherwise; and no one can by conduct or representation involve others in onerous engagements and then defeat the claims which such conduct has induced them to acquire. Saunders v. Hart, 57 Texas, 10; Marsalis v. Garrison, 27 S. W. Rep., 929; Menards v. Massey, 8 How., 293; Vidal v. Girard, 2 How., 127: State v. Milk, 11 Fed. Rep., 389; Cahn v. Barnes, 5 Fed. Rep., 334; Commonwealth v. Andre, 3 Pick., 224; Vermont v. Society for Propagation of Gospel, Fed. Cases, 16,820; Toppan v. Cleveland, C. & C. Ry. Co., Fed. Cases, 14,099; Zabriskie v. Cleveland, C. & C. Ry. Co., 23 How., 381; State v. Ober, 34 La. Ann., 361; State v. Taylor, 28 La. Ann., 462; The People v. Hagadorn, 104 N. Y., 516; The People v. Maynard, 15 Mich., 463; State v. Stanley, 14 Ind., 409.

The land being confirmed and required to be surveyed by an officer of the state, and he having made the survey, pointing out the original boundaries and recorded his field notes thereof in his office and returned the same to the general land office, and the same being approved by the land office and patent issued thereon, neither the confirmor nor the confirmees can deny that it is the same land confirmed on the application of Santiago de la Garza.

Wherever a state of facts must be assumed or a conclusion reached before the court can make a certain decree, the parties to the decree are estopped to deny the state of facts so assumed or the conclusion so reached. The court below in the case of Ruggles v. The State, January 8, 1862, before declaring that a part of the grant to Joaquin Galan had been lawfully expropriated by the government of Spain, was forced to reach the conclusion that compensation had been made to Manuel de la Garza; and that issue was therefore material to the decree and the state can not deny that the lands above were granted to him at the time. Woolley v. Sullivan, 92 Texas, 28; Gordon v. Thorp, 53 S. W. Rep., 357; Florida Cent. Ry. Co. v. Schutte, 103 U. S., 118; Raphael v. Trask, 118 Fed. Rep., 678; Shelby v. Creighton, 96 N. W. Rep., 382; Johnson v. Towsley, 13 Wall., 72.

The estoppel against the state applies to resolutions adopting the reports of committees, and to recitals of fact in such resolutions and reports, as well as to any and all other action on the part of the legislature within the limits of its powers as prescribed by the constitution of the state. Houston & T. C. Ry. Co. v. Odum, 53 Texas, 343; United

States v. Wiliamette Val., etc., Co., 54 Fed. Rep., 807; Commonwealth v. Pejepscut, 10 Mass., 155; Thrower v. Wood, 53 Ga., 466; Thornton v. Lane, 11 Ga., 520; Beall v. Beall, 8 Ga., 210.

In the District Court of Webb County suit No. 11 was properly instituted under the Act of February 11, 1860, for the confirmation of the tract of land called "Balconcitos"; the suit was properly pending in said court on the 11th day of February, 1865; on March 13, 1872, the said court finally confirmed the title to a large tract including the "Balconcitos" tract—the other lands being embraced in another suit consolidated with that first mentioned, wherefore, the said judgment of confirmation, in so far as it relates to the tract called "Balconcitos," is within the remedial provisions of the Act of April 4, 1881, which act was intended to be, and the same was and is a legislative grant of so much of the land described in said judgment as embraces the tract called "Balconcitos," being the lands here in controversy, and the remedial benefits of the Act of 1881 are not lost as to that part of the judgment, by reason of the consolidation with another suit wherein final judgment, rendered in 1862, had been set aside and the case reinstated by a proceeding which was a nullity, viz., an original suit instituted for the purpose. Lewis v. San Antonio, 7 Texas, 309; Grimes v. Bastrop, 26 Texas, 315; Turner v. Rogers, 38 Texas, 583; Grant v. Wallis Heirs, 60 Texas, 352; Miller v. Sullivan, 89 Texas, 480; Missouri, K. & T. Ry. Co. v. Enos, 92 Texas, 580.

Suit No. 11 was reinstated on the docket March 8, 1872, after it had been dismissed January 4, 1871; the court was without jurisdiction at all times after February 11, 1865; it was no further from the jurisdiction of the court after dismissal or after reinstatement than before its dismissal; the suit was afterwards consolidated with suit No. 14, in which final judgment had been rendered in 1862. Such being the case the fact that the judgment of 1862 was set aside and the case reinstated by a proceeding which was a nullity, viz., an original suit instituted for the purpose, made the consolidation improper, and would not operate to exclude from the benefits of the remedial Act of April 4, 1881, the entire judgment of confirmation rendered in the suits consolidated; but only so much thereof would be excluded as related to the lands embraced in the judgment of 1862. Miller v. Sullivan, 89 Texas, 480; Browder v. Clemens, 61 Texas, 587; Missouri, K. & T. Ry. Co. v. Enos, 92 Texas, 580; Raymond v. Cook, 31 Texas, 374.

The Act of April 4, 1861, is operative in every instance where all the following conditions exist: First. Suit in the proper court, commenced within three years from the passage of the Act of February 11, 1860. Second. Pendency of the suit in the proper court when jurisdiction was lost by operation of law, viz., by the expiration of the period of time fixed during which the Act of 1860 was made operative. Third. Final judgment of confirmation rendered in the court wherein the cause was properly pending when the Act of 1860 expired, or in some court to which the cause may thereafter have been transferred, as by change of venue. These conditions existing, the fact that judgment was rendered after the passage of the Act of August 15, 1870, conferring the right to

bring an original suit in Travis County for confirmation of titles, does not impair the right to the remedial benefits contemplated and intended by the Act of 1881—nor can any condition or conditions be engrafted by construction upon the Act of 1881 which may not be clearly shown to be intended by the legislature. State v. Delesdenier, 7 Texas, 105; Higgins v. Rinker, 47 Texas, 401; Thompson v. Buckley, 1 Texas, 35; Engelking v. Von Wamel, 26 Texas, 470; Sneeds v. Falls Co., 91 Texas, 168; ·Laughter v. Seela, 59 Texas, 177; Russell v. Farquhar, 55 Texas, 355; Dodson v. Bunton, 81 Texas, 658; Galveston, H. & S. A. Ry. v. State, 81 Texas, 572; Windsor v. O'Connor, 69 Texas, 578.

Plaintiff having alleged that the suit for confirmation of the Balconcitos tract was properly filed under the Act of February 11, 1860, and that final judgment of confirmation of said tract was entered in said suit after said act had expired; having alleged further that a patent was issued upon such judgment on July 8th, 1887; and having introduced evidence proving the truth of such allegations, the burden was upon the plaintiff to prove affirmatively some fact showing that the issuance of such patent was without authority of law, or was fraudulent —in the absence of such proof the courts will presume that the issuance of the patent was authorized by the Act of April 4, 1881. Its cancellation was, therefore, unwarranted. Clark v. Hills, 67 Texas, 141; Byers Bros. v. Wallace, 87 Texas, 503.

The defendants, relying upon the title evidenced by the patent issued July 8, 1887, pleaded the same in reconvention, specially setting out the conditions and facts upon which its issuance was based, viz.:

First.  Suit properly filed under the Act of February 11, 1860.

Second.  Pendency of the suit in the proper court when the Act of 1860 expired.

Third.  Rendition of judgment March 13, 1872, in the proper district court, finally confirming the title.

And having established by proofs the facts alleged, and having claimed specially in their plea the remedial benefits of the Act of April 4, 1881, and there being no evidence adduced by the plaintiff to rebut the legal conclusions arising from such proof, the title so evidenced should be held legal and valid, and the said patent was issued by the proper officers, and · in accordance with law. Same authorities.

GAINES, CHIEF JUSTICE.—This suit was brought for the State of Texas by its attorney-general, acting presumably under the Act of 1891, to recover the tract of land lying on the Rio Grande River, in Webb County, commonly known as the "Balconcitos." In the suit it was sought to cancel a patent which had been issued by the officers of the state, the claim being that the patent was issued without authority of law and was therefore void.

The defendants being unable to show any direct documentary evidence of a grant sought to establish such grant by circumstantial evidence. They sought to show, that previous to the year 1804, the King of Spain granted to one Joaquin Galan, the tract of land fronting on the Rio Grande River, upon which the town of Palafox was afterwards laid out; that Galan, the grantee, conveyed the grant to one Manuel Garza; that

subsequent to this conveyance in the year 1810, the King of Spain being desirous of establishing the municipality of Palafox, expropriated that part of the Galan grant which fronts on the river, and as a compensation to Garza granted to him the "Balconcitos" tract which lies also on the stream immediately above the first grant.

To establish these facts, the defendants relied in part upon a judgment of the District Court of Webb County, rendered in a cause entitled Daniel Ruggles v. The State of Texas. That suit was brought by the plaintiff under the Act of February 11, 1860, to establish title to the alleged Joaquin Galan grant. We copy so much of that judgment as is pertinent to the issues in this case. After reciting that it appeared to the court that some time previous to the year 1804, the Government of Spain granted to Joaquin Galan a large tract of land on the Rio Grande, giving its field notes, the judgment proceeded: "It further appeared to the court by original authentic documents that in the year 1805, said Joaquin Galan sold the said tract of land to one Manuel Garza, who settled upon the same and occupied it for many years, and that about the year 1810, the Government of Spain being desirous of forming a town on the river bank where the said Manuel Garza had planted his said rancho, the said government did then and there condemn and take from the said Manuel Garza for the use of the government, all that part of his said tract of land lying and fronting on the Rio Grande to the depth of six Mexican leagues, and did then and there lay out and establish the town of Palafox on the eastern bank of the Rio Grande, with its exidos extending across the same, and gave and donated the lands above and below the said town to the settlers in the form or shape of porciones, running back for depth six Mexican leagues, or 30,000 varas, and that for the said condemnation the said Manuel Garza was reimbursed in lands lying above the town and jurisdiction of Palafox. It further appeared that the jurisdiction of Palafox extended five leagues above and the same distance below the center of the plaza of the said town, which, or a part of the same, were granted in porciones to the settlers; it further appeared that about the year 1818, the hostile Indians, in large numbers, surrounded the said town of Palafox and destroyed the same by fire and drove off the stock and broke up the said settlements; it further appeared by the testimony of old and respectable citizens of Laredo, that they knew of the titles to the land in question, and by one of them that he had read said titles and knew the landmarks called for in the same; that when the town was destroyed, all the archives of the same were burnt, most of the inhabitants were killed, and only three or four houses escaped being burnt by reason of dirt roofs, the inmates escaping in the night; it further appeared that the regions of these lands is and since said occurrence has been an Indian range, and to this day unsafe for settlers; it further appeared to the court that subsequently to the destruction of said Palafox some of the heirs of Manuel Garza, deceased, sold their rights in said lands to Daniel Ruggles, the petitioner in this case; all of which said facts having been proven to the satisfaction of the court by many of the oldest inhabitants of the towns of Palafox and Laredo; it is in consideration of the premises hereby ordered, adjudged and decreed by this court that the said ancient

title of Joaquin Galan to the said lands be confirmed to him, his heirs and assigns (except the part which was condemned to the use of the settlers), in the following manner, to wit: (Describing boundaries.) And that they have and recover from the State of Texas all the lands embraced within the aforesaid boundaries, constituting and making —— leagues of land, to be surveyed by the proper officer and the field notes to be returned unto the general land office of the state with all convenient speed; that the plaintiff in this suit be condemned to pay all costs of this suit and the fees and charges provided by law; all of which in accordance with the provisions of an act of the legislature of this state, entitled 'An Act to ascertain and adjudicate certain legal claims for lands against the state, situated between the Nueces River and the Rio Grande,' approved February 11, 1860."

It appears that Daniel Ruggles, in the suit in which that judgment was rendered, claimed title under Manuel Garza; and it also appears in this case that the defendants claimed title to the land in controversy through Ruggles, who also claimed title to the latter tract through Garza. So it is apparent that the state was a party in each of the suits, and that while Ruggles was the adverse party in the first, his privies were the adverse parties in the present suit. Therefore, the decision of any question of fact in the first suit, the determination of which was found necessary to the judgment of that suit, is conclusive as between the parties to this action. The pleadings in the case of Ruggles v. The State do not appear in the record before us; but the recitals in the judgment leave no doubt as to the issues presented and decided in that case. The plaintiff contended that the land there in controversy had been granted to Joaquin Galan by the King of Spain and that he held Galan's title. These issues were decided in his favor because he was given judgment for the land except for so much thereof as was covered by the town of Palafox. On the other hand, it must have been contended on behalf of the state, that even if there had been a valid grant, so much of the grant as was covered by Palafox had been lawfully expropriated, and therefore the plaintiff was not entitled to recover that part of the grant. Now, if it were the law of Spain in 1810, the year of the establishment of Palafox, that before an expropriation could be completed the owner of the property sought to be taken for a public use had to be first compensated or indemnified, then as we think it became material for the state in the Ruggles case to show that the portion of the Galan grant upon which Palafox was laid out was not only declared expropriated, but that Manuel Garza, the owner at the time of the expropriated land, had received compensation. That this vigorous rule of natural justice was the rule of the Spanish law, the meagre authorities accessible to us leave no room for doubt. (Escriche's Dictionary; Verbos, Bienes Particulares.) The law seems as old at least as the Partidas. (2 Codigos Españoles, Segundo Partida, Ley 2, title 1, pp. 2, 320, in which is defined the powers of the sovereign. 3 Codigos Españoles, Ley 31, title 18, 2 Partida, p. 200; also 6 Febrero Reformado, p. 314.)

Therefore, as we think the judgment of the District Court of Webb County, rendered in 1862, in the case of Ruggles against the state, establishes as between the parties and their privies these facts: (1) that

there was a valid grant of the lands upon which the town of Palafox was subsequently laid out to Joaquin Galan, (2) that the title to the land passed to Manuel Garza, (3) that in 1810 the government, for the purpose of establishing that town, expropriated a part of the grant, and (4) at the same time gave compensation to the owner, the findings of these facts were material to the determination of the issues involved in that case, and therefore fall within the rule announced in O'Connor v. The State (96 Texas, 492). The facts found in the Ruggles case became "directly involved in" and "were necessary to the determination of the issue presented to that court."

The facts thus established— namely, that Manuel Garza's land was expropriated and that compensation was made to complete the condemnation—show a just foundation for the grant claimed. They suggest that the compensation for the lands taken was a grant of other lands in lieu thereof. As we gather from law 2, title 1, of the Second Partida, before the king could rightfully take property, he had either to pay in money, or give something in exchange of equal or greater value than the thing taken. (2 Codigos Españoles, 520.) Since in that jurisdiction the government had large bodies of unappropriated public domain and perhaps but little money, it seems very reasonable that the compensation should have been made in other lands adjacent to the expropriated lands and the remainder of the Galan grant. The recital in the judgment of 1862 in the case of Ruggles against the state, that "Manuel Garza was reimbursed in lands lying above the town and jurisdiction of Palafox," if taken as true, shows that this was a fact, and that at least Garza was compensated by the grant of other lands, although, as we have held, the determination that compensation was made for the expropriated land was necessary to the determination of one of the issues in the Ruggles case, it was hardly material to prove in what the compensation consisted. Therefore, we are not prepared to hold that the finding of the court upon that matter was conclusive upon the parties. But we think since this judgment was rendered, nearly forty years before the present suit was instituted, the recital may be looked to as evidence, rebuttable though it may be.

Still, taking the facts which we think were established and the further recital which we think should only be looked to as evidence as unrebutted, they fall short of showing that the tract known as "Balconcitos" was the land given in compensation for the expropriated lands.

Let us then look further. Several witnesses testified as to the occupancy and claim of "Balconcitos" by the heirs of Manuel Garza. They were very old people, and it appears that they testified as to the conditions as they existed at or about the time of their earliest recollection. Some of them at least testified that the claim was that the land had been granted to Garza by the king of Spain.

On February 10, 1852, an act of the legislature was approved, which relinquished the title of the state to certain lands therein specified, which lie in certain counties in the southwestern part of the state, and authorized their survey and patents to be issued therefor. Among other lands therein mentioned is "3 heirs and assigns of Joaquin Galan, one porcion jurisdiction of Palafox." Purporting to act under the authority of this

act, one Trumble, as district surveyor of the District of Webb County, made a survey of the land in controversy, which he called a resurvey, which gives the field notes of the survey calling for natural and artificial objects which fix the corners and boundaries of the tract. We do not think that by the description above given, the legislature intended to point out the Balconcitos tract. In the first place, it is not claimed that that tract was granted to Galan, but to Garza, his vendee. In the second, while "porcion" as applied to land is not a technical term (see word in Escriche's Dictionary), and means no more than portion or parcel in English, we incline to think the usual application of the word in the old Spanish grants along the Rio Grande was to the parcels ordinarily set aside to the settlers of new towns, such as Laredo and Palafox. Besides, the "porcion" here mentioned was in the jurisdiction of Palafox, and we do not understand that "Balconcitos" was within that jurisdiction. We think, however, the survey is material since it shows a claim asserted at that time, and also indicates that the tract had been previously surveyed.

According to the testimony of the Commissioner of the General Land Office, the survey in question is shown upon a map in the land office, which appears to be the oldest map on file in his office as to the surveys therein shown. It is, however, marked in the name of Joaquin Galan. This discrepancy is reasonably accounted for by the fact that the land, although granted to Manuel Garza, was granted in exchange and compensation for a part of the Galan grant. Being in the nature of a substitution for a part of a grant originally made to Galan, it may not inappropriately have been treated as a part thereof. Both the original grant and "Balconcitos" proceeded from the one consideration.

Again, a joint committee of the Senate and House of Representatives having been appointed to examine and report upon certain proceedings in the District Court of Webb County in which the titles to the original Galan Grant and "Balconcitos" were involved, such committee made their report. The duties required them, among other things, to investigate the action of the court in regard to those surveys, which was taken after the judgment of 1862 in the case of Ruggles against the state for the recovery of the Galan grant. After setting out that the two suits had been brought by Ruggles against the state, one for the recovery of the Galan grant, and the other for the recovery of the Balconcitos, the report proceeds: "That the district attorney filed answers in said causes, and on the 8th day of January, 1862, one of said causes, No. 14, was tried on the merits and judgment entered therein at length on the minutes of the court, from which it appeared that the whole of said tract was granted to one Joaquin Galan by the Spanish government, about or before the year 1805, who sold said land to one Manuel Garza; that afterwards the town of Palafox was founded by the Spanish government, and a portion of said town was laid off on the front of this tract of land and extending across the Rio Grande, and the municipal jurisdiction of said town extended up and down on the front of said land for some six leagues. That the said Garza, the grantee of said Galan, received in compensation from the government other lands, called "Balconcitos," above and adjoining the lands in the suit tried, and that these lands so

received in compensation for the Palafox lands were the lands embraced in the other petition, No. 11, before mentioned." This evidences a completed grant of the land in controversy to Manuel Garza, and is consistent with all the other testimony relied on by defendants in error. Is there any sufficient testimony in the record which satisfactorily rebuts the facts so recited in the report of the joint committee?

First, it is urged in behalf of the state, that no documentary evidence contemporaneous with or nearly contemporaneous with the alleged grant, which tends to show that any such grant was ever made, has been produced. This is usually the case in similar controversies, and we think that the most that can be required under such circumstances is to show a reasonable probability that the documents may have been lost or destroyed. Here it appears that shortly after the time of the alleged grant the country was raided by hostile Indians, the inhabitants killed or driven away and their houses burnt. (See Texas Mexican Ry. Co. v. Uribe, 85 Texas, 386.)

It is also insisted in behalf of the state that the claim for Balconcitos was not presented to Bourland and Miller—a commission who were appointed under an act of the legislature to receive and report upon unsettled land claims in Webb and other counties. The testimony of the Commissioner of the General Land Office leaves it uncertain whether the claim for "Balconcitos" was one of those presented to the commission. But at all events, we think, that if presented, it was for some reasons not finally approved. But conceding that it was not presented, we think that under the facts, so far as we know, it was a circumstance of very little weight. That commission was appointed forty years after the alleged grant. In all human probability, the grantee was then dead and some of his heirs may have been minors. The others were most probably Mexicans, ignorant of the laws, and if living upon the land as the testimony tends to show, resided many miles from the county seat of the county and from access to legal counsel. Besides, if there be anything in the evidence in the case that the right of Garza's heirs had up to the appointment of the commission referred to, ever been challenged, it has not been pointed out.

We have already considered the fact that upon the old map in the General Land Office the "Balconcitos" tract is marked in the name of Galan, and have endeavored to show that it was not consistent with the claim here asserted by defendants in error.

Since, as has been adjudicated in O'Connor v. The State, supra, the judgment of 1872 was void for want of jurisdiction in the court which rendered it, we are of opinion that neither it nor its recitals should be looked to for any purpose.

The case is like that of the Texas Mexican Railway Company against Uribe (85 Texas, 386), in which we held that the evidence showed conclusively that there was a grant from the king of Spain. (See also, Von Rosenberg v. Haynes, 85 Texas, 357.) The present case is weaker it is true, in that here, as has been pointed out, there is no contemporary nor nearly contemporary documentary evidence of the asserted grant. The possession, the interruption of that possession and the excuse there-

for, are very much the same. Yet we have some more potent circumstances in this than in the cases cited.

We granted the writ of error in this case upon a misconception of the facts. Upon a more thorough consideration of the evidence, we more fully agree with the Court of Civil Appeals, and hold that the evidence shows conclusively that the "Balconcitos"—the land in the controversy—was granted to Manuel Garza in the year 1810.

Therefore, the judgment of the Court of Civil Appeals, which reversed the judgment of the trial court and rendered judgment for the defendants, is affirmed.

*Affirmed.*