## WHITTINGTON v. SMITH et al. (ARKANSAS FUEL OIL CO. et al., Interveners).

### No. 807.

District Court, E. D. Texas, Tyler Division.

Aug. 18, 1936.

G. H. Whittington, Campbell & Leak, and Saye & Saye, all of Longview, Tex., for plaintiff.

Wm. McCraw, Atty. Gen., and Harry S. Pollard, Asst. Atty. Gen., for defendants.

Davis B. Trammel and Clayton L. Orn, both of Fort Worth, Tex., and C. R. Winn and F. J. Scurlock, both of Dallas, Tex., for interveners.

Before HUTCHESON, Circuit Judge, and KENNERLY and McMILLAN, District Judges.

KENNERLY, District Judge.

Plaintiff, a citizen of Texas, and claiming to be the owner of a mineral lease on approximately 3.23 acres of land in a solid body in Gregg county, in this district and division, by amended bill filed herein February 10, 1936, sues the defendants, members of the Railroad Commission of Texas, citizens of Texas, and alleged to be residents of the Western district of Texas, and E. N. Stanley, alleged to be the chief enforcement officer of the commission, a citizen of Texas, and alleged to be a resident of this district and division, to restrain such defendants, who plaintiff says are purporting to act by virtue of the conservation laws of Texas (articles 6004 to 6066, title 102, 1925 Revised Civil Statutes of Texas and Amendments [Vernon's Ann.Civ.St.Tex. art. 6004 et seq.]) and the rules, regulations, and orders of the commission promulgated thereunder, from interfering with plaintiff in the production, sale, or disposal of petroleum oil from what is referred to in plaintiff's bill as his well No. 2a on such tract of land, and from bringing and prosecuting against him, under the Texas statutes, suits for penalties in connection with the drilling and operation of such well by plaintiff.

Defendants' answer in effect denies the material allegations in plaintiff's bill, and combats plaintiff's claim. Interveners, Arkansas Fuel Oil Company and Stanolind Oil & Gas Company, who claim interests in the minerals in, and producing oil wells on, lands adjoining the 3.23 acres, join with the defendants in combating plaintiff's claim.

■ There is jurisdiction here under subdivision (1)(a) of section 41, title 28 U.S.C.A.

■ Plaintiff alleges that the commission has, under such conservation laws, promulgated certain rules, regulations, and orders regulating the taking and production of oil in Texas, and particularly has promulgated its rule 37, and has entered its order, dated February 3, 1936, which plaintiff says prohibit and prevent plaintiff from further producing, and the pipe line company from taking, oil from such well, which rules, regulations, and orders, and particularly rule 37, and the order of February 3, 1936, plaintiff attacks as constitutionally invalid under the Federal Constitution. Application for interlocutory injunction against defendants has been heretofore denied by this court, organized under section 380, title 28 U.S.C.A., and this is a hearing on the merits of the questions presented under the pleadings stated. Any other questions between interveners and plaintiff which may be presented by the pleadings are, by agreement, submitted to, and to be decided by, the sitting judge of the district. Ryan v. Amazon Petroleum Corp. (C.C.A.) 71 F.(2d) 1; Amazon Petroleum Corp. **v.**

Railroad Commission (D.C.) 5 F.Supp. 633; Tysco Oil Co. v. Railroad Commission (D.C.) 12 F.Supp. 195, 197.

The facts necessary to decision are substantially as follows:

(a) On and prior to January 19, 1931, the Center Baptist Church (colored) owned approximately 3.53 acres of land out of the W. H. Castleberry survey in Gregg county, in the East Texas oil field. She executed to one Alford an oil and gas lease thereon, reserving, however, a 1.3-acre tract (referred to for brevity as cemetery tract) upon which her cemetery is located. This lease passed by mesne conveyance to, and is owned by, plaintiff. (For brevity it is called plaintiff's land.)

(b) Rule 37 of the commission, promulgated under such conservation laws, as it applies to the East Texas oil field, provides that no well for the production of oil or gas shall be drilled in such field nearer than 660 feet to any other completed or drilling well on the same or adjacent tract or farm, nor nearer than 330 feet to any property, lease, or subdivision line: "Provided that the Commission in order to prevent waste, or to prevent the confiscation of property will grant exceptions to permit drilling within shorter distances than above prescribed whenever the Commission shall determine that such exceptions are necessary either to prevent waste or to prevent the confiscation of property."

Such rule then sets forth the procedure before the commission when such a permit is desired, and provides that it may be granted only after the commission has determined that an exception to such rule is necessary either to prevent waste or to protect the property belonging to the applicant from confiscation.

Such rule also provides as follows: "No well drilled in violation of this rule without special permit obtained in the manner prescribed in said rule, and no well drilled under such a special permit which does not conform in all respects to the terms of such permit, shall be permitted to produce either oil or gas; and any such well so drilled in violation of said rule or in violation of a permit granted as a special exception to said rule shall be plugged."

(c) October 20, 1931, as an exception to such rule 37, the commission, on plaintiff's application, granted him a permit to drill a well to produce oil on plaintiff's land, known as well No. 1. Such well was drilled and completed shortly after the issuance of the permit, and is now, has been continuously since completion, producing oil, and has produced large quantities of oil. Such well No. 1 is located a short distance south of the south line of the cemetery tract, and at a point which is not far from the center of the whole church tract if the cemetery tract be included.

(d) Subsequent to the date of the lease, $^{54}/_{100}$ of an acre covered by the lease, and being the eastern portion of the southern portion of plaintiff's tract, was recovered from plaintiff, in litigation, by one Rucker. With the consent of plaintiff, but over the protest of interveners, the commission granted Rucker or his grantee, as an exception to rule 37, a permit to drill a well, and a well was drilled on the $^{54}/_{100}$ of an acre, and has since been, and is now, producing oil. This well is located in the southeast portion of the church tract about halfway between the south line of the cemetery and the south line of the church tract. Plaintiff has, however, opposed from time to time, before the commission, the granting of similar permits to drill wells on the cemetery tract.

(e) Interveners own oil leases upon, and/or the minerals in, large tracts of land adjoining or adjacent to plaintiff's tract, and, under permits from the commission, have drilled wells thereon, and are now, and have for a long period of time been, producing oil in large quantities therefrom. Such facts and others pertinent were taken into consideration by the commission in granting plaintiff such permit for well No. 1 as an exception to rule 37.

(f) January 19, 1934, plaintiff applied to the commission for a permit (as an exception to rule 37) to drill a well called by him well No. 2 in the northern portion of plaintiff's tract at a point 85 feet west and 90 feet south of the north line of plaintiff's tract and near the west line of the cemetery tract. This application was abandoned, and March 22, 1934, he applied to the commissioner for a similar permit to drill a well in the southern portion of plaintiff's tract about 200 feet south of the proposed location of well No. 2 and 121.5 feet east of the west line and 91.35 feet north of the south line of plaintiff's tract. This well was referred to in the application as well No. 2a. The commission, after notice and hearing required by law and its

rules and consideration of the pertinent facts, including the fact that plaintiff already had a producing well on his land, denied his application. His motion for rehearing was denied.

(g) By original bill filed in this cause December 22, 1934, plaintiff sued defendants herein, seeking to enjoin them from interfering with him in drilling a well on plaintiff's land and producing such oil therefrom as is permitted under the rules and regulations of the commission, which well he refers to also as well No. 2a, but which he describes in his bill as being at a different location; i. e., 113 feet south of the north line and 113 feet east of the west line of plaintiff's tract. This description places the well nearer the location of proposed well No. 2, on which plaintiff's application for a permit was abandoned, than to well No. 2a, on which plaintiff's application for a permit was refused by the commission.

The record shows no service of plaintiff's original bill on defendants, and no answer of such original bill by any of the defendants.

(h) On December 26, 1934, a final decree was entered on plaintiff's original bill by agreement of counsel for plaintiff and counsel for the Railroad Commission. Such final decree restrained and enjoined defendants from in anywise interfering with plaintiff in drilling "his Number Two A (No. 2–A) well" on plaintiff's land, and from interfering with plaintiff in producing therefrom "such an amount of oil from said well, when and if it is drilled as is allowed under the valid orders, rules and regulations of the Railroad Commission of the State of Texas," etc. It provides: "Such well to be drilled 113 feet South of the North line, and 133 feet East of the West line" of plaintiff's land. In other words, the description of well No. 2a in the decree follows its description in plaintiff's original bill.

(i) In January, 1935, after the entry of such final decree, plaintiff began drilling well No. 2a as described therein, and defendants moved for a rehearing and to set the decree aside. Interveners intervened and joined in the motion. Interveners also filed bills of review. On January 9, 1936, rehearing was granted, and the final decree set aside and vacated. However, before the hearing on such motions, the commission withdrew its motion, and the order setting aside the decree was granted upon the motions of the interveners.

No appeal has been prosecuted from the order setting aside the final decree, and such order is now final.

(j) Between the date of the entry, of the final decree and the date it was set aside, plaintiff had completed well No. 2a (as described in the decree) and had begun producing oil therefrom, and continued to produce and sell large quantities of oil therefrom until directed to cease by the order of the commission of February 3, 1936, of which plaintiff here complains. During such period, the commission, from time to time, issued, or caused to be issued, permits or tenders, under which plaintiff was permitted to sell, and the pipe line company was permitted to take, such oil.

(k) Such order of February 3, 1936, recites and refers to various rules, regulations, and orders of the commission promulgated in the enforcement of the conservation laws, recites the facts with respect to the applications made by plaintiff to the commission to drill wells Nos. 1, 2, and 2a (as described in plaintiff's application to the commission) on plaintiff's land and the proceedings before the commission and in this court with respect thereto, and that plaintiff has drilled well No. 2a (as described in plaintiff's bill), and is producing oil therefrom and delivering same to the pipe line company, etc. There is a specific finding in the order that the commission has never at any time issued a permit authorizing the drilling of such well or the production of oil therefrom, and plaintiff and the pipe line company are ordered to close down such well and cease taking oil therefrom "until further order of the Railroad Commission or the entry of a decree or judgment to the contrary by a court of competent jurisdiction."

The order does not on its face recite notice to plaintiff prior to its entry. When plaintiff was notified of its entry, he ceased to produce oil from the well.

No suit or suits have been filed by plaintiff under section 8 of article 6049c of the Texas statutes, complaining of any of the rules, regulations, and orders of the commission with respect to plaintiff's land.

1. The conservation laws of Texas, the right of the Legislature to confer power upon the Railroad Commission to enforce them, and the authority of the commission to promulgate and enforce reasonable rules, regulations, and orders to that end, have so frequently and uniformly been upheld by both the federal and state courts that we

only find it necessary to refer to several recent cases where the leading cases, both federal and state, are collated and cited; i. e., Brown v. Humble Oil & Refining Co. (Tex.Sup.) 83 S.W.(2d) 935, 99 A.L.R. 1107; Id. (Tex.Sup.) 87 S.W.(2d) 1069, 101 A.L.R. 1393; Magnolia Petroleum Co. v. Blankenship et al., 85 F.(2d) 553 (C.C. A.5th); Tysco Oil Co. v. Railroad Commission, supra.

2. Plaintiff's application made to the commission to drill well No. 1 on the southern portion of plaintiff's land and near the center of the church tract (if the cemetery tract be included) as an exception to rule 37 was granted, the well drilled, oil has been, and is being, produced therefrom, and there is no complaint from any one here. His similar application to drill well No. 2 on the northern portion was abandoned by him. His similar application to drill well No. 2a in the southern portion and about 200 feet south of the proposed location of well No. 2 was refused by the commission.

There has been no application by plaintiff to the commission for, nor has plaintiff been granted, a permit to drill and produce oil from well No. 2a drilled by him in the northern portion of the survey, and about which he is complaining here. It is perfectly plain that such well was drilled in violation of the conservation laws of the state and the rules of the commission promulgated thereunder, and particularly the above-quoted provisions of rule 37.

■ But plaintiff says that entry of the agreed final decree, enjoining the commission from interfering with plaintiff drilling such well and producing oil therefrom, the withdrawal by the commission of its motion to set the decree aside, and the granting (pending the hearing of the motion to set the decree aside) of tenders by the commission permitting the removal of oil produced therefrom, have the same legal effect as if he had applied to and been granted a permit by the commission. This view is not supported by the authorities. Magnolia Petroleum Co. et al. v. Railroad Commission (Tex.Sup.) 96 S.W.(2d) 273; Id. (Tex.Civ.App.) 90 S.W.(2d) 659; Sun Oil Co. v. Gillespie (Tex.Civ.App.) 85 S.W. (2d) 652; Rabbit Creek Oil Co. v. Shell Petroleum Corp. (Tex.Civ.App.) 66 S.W.

(2d) 737; Brown v. Humble Oil & Refining Co., supra.

■ Plaintiff is here, therefore, asking that the hand of the commission, officers of the state, enforcing the state's conservation laws and its lawful orders thereunder, against his unlawfully drilled well, be stayed. This, a court of equity will not do. This is but stating a well-known principle of equity; i. e., that equity will not aid one who comes as a law violator. Some of the recent cases are Melton v. Railroad Commission (D.C.) 10 F.Supp. 984; Hercules Oil Co. v. Thompson (D.C.) 10 F.Supp. 988; Railroad Commission v. Archer (Tex. Civ.App.) 80 S.W.(2d) 506.

It is unnecessary for us to determine, and we do not determine, what plaintiff's right would have been, or would be, had the commission proceeded, or should it now proceed, against him, for the collection of a penalty under article 6036 of the Texas statutes. See article 6036, Texas Revised Civil Statutes of 1925 and its various amendments, and article 6036, Vernon's Ann.Civ.St.Tex. for violation of such laws and the rules of the commission. Nor do we determine what his rights would have been had he refused to obey the commission's order of February 3, 1936, which he attacks, and had the commission instituted proceeding against him to enforce such order, etc., nor what his rights may be should the commission, as its order of February 3, 1936, indicates it may do, further consider the situation of all parties at interest and adjust their rights. What we determine, and all we determine, is that, under the facts here, plaintiff may not have the aid of a court of equity to restrain interference by the commission with his well drilled in violation of the conservation laws of the state and the rules of the commission, and to restrain the commission from proceeding against him for penalties under the Texas statutes.

3. This disposition of the case as between plaintiff and defendants disposes also of the case between plaintiff and interveners, for, they being merely interveners, their case stands or falls with defendants' case.

Judgment will enter, dismissing plaintiff's bill.