RAILROAD COMMISSION et al. v. ARKANSAS FUEL OIL CO. et al.

No. 9034.

Court of Civil Appeals of Texas. Austin.

Feb. 5, 1941.

Rehearings Denied Feb. 26, 1941.

Gerald C. Mann, Atty. Gen., and Edgar W. Cale, Asst. Atty. Gen., for Railroad Commission.

Underwood, Johnson, Dooley & Wilson, of Amarillo, and Saye & Saye, of Longview, for Maud Whittington, executrix of J. O. Whittington's estate.

Joe E. Estes and Phillips, Trammell, Estes, Edwards & Orn, all of Fort Worth (H. C. Walker, Jr., and James B. Henderson, both of Shreveport, La., of counsel), for appellee Arkansas Fuel Oil Co.

Frank J. Scurlock and Turner, Rodgers & Winn, all of Dallas (Donald Campbell, of Tulsa, Okl., of counsel), for appellee Stanolind Oil & Gas Co.

BAUGH, Justice.

This is a Rule 37 case. The permit involved was to operate a third well already drilled on a 3.77-acre tract in the fairway of the East Texas field in Gregg County, which tract was owned and leased by a colored Baptist Church, variously designated, but hereinafter referred to as the church. The tract of land was approximately square in dimensions. 1.3 acres, approximately square, in the northeast corner of said tract, was used as a cemetery, leaving the other church property in the form of an L. The original lease made by the church in 1931 did not include the cemetery. This lease was acquired by Whittington and in November, 1931, he drilled, under permit from the Railroad Commission, well No. 1, located near the center of the entire 3.77-acre tract, and about 20 feet south of the south line of the cemetery lot. Thereafter, the heirs of J. H. Rucker, who originally conveyed the property to the church in 1884, which deed provided that if the property ceased to be used for the purposes stated in the grant, it should revert to his estate, sued to recover said land. This suit was compromised and settled by an agreed judgment of June 27, 1932, setting aside to the Rucker heirs a .54-acre tract out of the southeast corner of the 3.77-acre tract extending from its south line to the south line of the cemetery lot. Lease on this .54-acre tract was acquired by the Danciger Oil & Refining Company, and a well drilled in the center of that tract in October, 1932. In 1934, the church leased the cemetery 1.3-acre tract. The lessees of this tract applied to the Commission for a well on the cemetery lot, which application was protested by Whittington and the other adjacent leaseholders, who are appellees in the instant suit, and was by the Commission refused. In March, 1934, Whittington acquired the lease on the cemetery tract, thus giving him a leasehold estate in 3.23 acres, or on all of said tract except the .54-acre Danciger tract in the southeast corner. Whittington then applied for a second well on his 3.23 acres to be located in the southwest corner; that is, south and west of the cemetery tract and of his well No. 1. This application was protested by interested parties and denied by the Commission. Thereupon Whittington filed suit in the Federal District Court to enjoin the Commission from interfering with his drilling an additional well on his 3.23 acres, not at the place applied for, but some 200 feet north of such location thus placing it in the northwest, instead of in the southwest, portion of the 3.23-acre tract, about midway of the west line of the cemetery tract and 20 feet west of such line. This injunction was granted by the Federal Court on December 26, 1934, and Whittington drilled his well No. 2 in January, 1935. Suit was thereupon filed by the Commission, in which the Arkansas Fuel Oil Company and the Stanolind, adjacent leaseholders, intervened, to set aside the injunctive order of December 25, 1934. That case was finally heard before a three-judge Federal Court; a report of its disposition thereof, wherein a full statement of all the facts is found, appears in Whittington v. Smith, D.C., 16 F.Supp. 448, 452. In that suit Whittington attacked the constitutionality of Rule 37, and urged the necessity for an additional well on his 3.23 acres to prevent confiscation of his property, to prevent waste, etc. The Commission there pleaded, and offered extensive proof to show, that such second well would cause waste, was not needed to prevent confiscation of Whittington's property, but would give him an

undue drainage advantage over his neighbors. Meantime, the Commission had ordered the well, already drilled, to be closed. After a full hearing, the Federal Court dismissed Whittington's bill for want of equity, limiting its decision, however, as follows: "What we determine, and all we determine, is that, under the facts here, plaintiff may not have the aid of a court of equity to restrain interference by the commission with his well drilled in violation of the conservation laws of the state and the rules of the commission * * *."

This judgment was entered on August 18, 1936. In March, 1937, Whittington applied to the Commission for a permit to open and operate this well No. 2, which permit the Commission granted after an extensive hearing, on July 29, 1937. This order is the one here under attack. In a trial to the court without a jury the court set aside as invalid said order or permit and enjoined the operation of the well. From this judgment, the Railroad Commission and Mrs. Maud Whittington, independent executrix, made a party upon the death of J. O. Whittington, have appealed.

The first question presented is whether the Railroad Commission is estopped by its 1934 order denying Whittington's application for a second well on the 3.23-acre tract, and by its pleading and proof offered in the trial in the Federal Court, to the effect that such well would cause waste, and was not needed to prevent confiscation of property and was otherwise illegal, to now come into court and urge the direct opposite to sustain its order of July 29, 1937, no material change of conditions having occurred meantime, except such as are applicable to the field as a whole.

■ While the Federal Court limited its decision to the grounds above stated, it is not controverted that the Railroad Commission made common cause in that court with the adjacent leaseholders in defense to Whittington's suit; and there urged by pleadings and extensive proof that the well here in controversy would cause waste, and was not necessary to prevent confiscation of Whittington's property. The evidence in the Federal Court, a transcript of which has been filed in the instant case, amply sustained both contentions. While it is now settled that though the Commission may have refused a permit, if and when conditions changed, a leaseholder may again apply to, and obtain from, the

Commission a permit for such well if such changed conditions warrant it. Gulf Land Co. v. Atlantic Refining Co., 134 Tex. 59, 131 S.W.2d 73; Edgar v. Stanolind Oil & Gas Co., Tex.Civ.App., 90 S.W.2d 656, writ refused. But this necessarily implies that —no issue of waste being here involved— such changes reasonably affect the property rights of the applicant. That is, that they will cause confiscation of his property. Since 1936, four additional wells had been drilled on the 100-acre Barnsdall lease to the south of the Whittington tract, and two on the 146-acre Stanolind lease to the east; but the closest of these wells to the one here involved was more than 1,150 feet, and all these additional wells gave the offsetting leases a density of only one well to approximately 5½ acres. Whereas, if the 3.77-acre tract be treated as a unit, which we conclude it must be, it already had, without the well here in controversy, two wells, or a density of one well to 1.88 acres, which wells had been producing since 1931 and 1932, respectively.

■ On the issue of estoppel of the Railroad Commission to take and urge in the instant case a directly opposite position from that urged in its pleadings and proof involving the same land and the same well in the Federal Court, appellants now urge that whatever may have transpired in the former suit in the Federal Court, under Art. 4411, R.C.S., and several cited cases, particularly City of San Angelo v. Deutsch, 126 Tex. 532, 91 S.W.2d 308, and Railroad Commission v. Lacy, Tex.Civ. App., 100 S.W.2d 118, any waivers, acts, mistakes or negligence of the then Attorney General in that case could not prejudice the rights of the State in the instant case. Manifestly these authorities have no application to the situation here presented. The Railroad Commission was a party to that suit, represented by the Attorney General, but itself actively participating therein seeking to uphold its own order on specific grounds. Nor is the issue here presented one in which only the State is interested. No issue of waste, the one in which the State is primarily interested, is here involved. The permit was granted on the recited ground to prevent confiscation, as between him and the adjacent property owners, of Whittington's property, and as an exception to the general spacing rule. In such case the controlling issue involved relates primarily to the private property rights of the individuals concerned, the

State's interest being to see that these property rights are properly protected. McCutchin v. Sun Oil Co., Tex.Civ.App., 139 S.W.2d 848, writ refused.

 The general rule is now well settled that a party to one law suit who takes a particular position by pleading, admission or argument, wherein a judgment is rendered in his favor, is estopped from taking an inconsistent position in a subsequent suit involving the same parties and the same subject matter. 26 Tex.Jur., § 364, p. 35, and numerous cases cited in support of the text. It is likewise a general rule that when the State enters the courts as a litigant it casts off its robe as a sovereign, comes as would an individual litigant, and is bound by the judgment rendered as would an individual litigant. State v. Cloudt, Tex.Civ.App., 84 S.W. 415; State v. Ortiz, 99 Tex. 475, 90 S.W. 1084; State v. Stanolind Oil & Gas Co., Tex.Civ. App., 96 S.W.2d 297.

 We are inclined to the view that the Railroad Commission was, under the authorities, estopped to take in the instant suit a position diametrically opposed to that taken in the Federal Court, the same well, the same land, and the same parties, though not in the identical capacities here as in the Federal Court, being involved in both; and there being no material change in conditions between the time they denied Whittington's application in 1934 and when they granted it in July, 1937.

 Regardless of this, however, it is clear that the permit in question is invalid, as held by the trial court, for two reasons: First, because it was granted on a voluntary subdivision requiring an exception to Rule 37, after same became applicable to the 3.77-acre tract; and, second, because no confiscation of Whittington's property without it was shown. The subdivision of the 3.77-acre church property was made by an agreed judgment between the Rucker heirs and the other claimants in 1932, after well No. 1 had already been drilled on said tract. This constituted a voluntary subdivision, giving no rights thereunder to develop the tracts separately under the holding originally announced in Sun Oil Co. v. Railroad Commission, Tex. Civ.App., 68 S.W.2d 609, pursuant to which the Commission promulgated its own rule against same on May 29, 1934. See also Humble Oil & Refining Co. v. Lassater, Tex.Civ.App., 120 S.W.2d 541;

Humble Oil & Refining Co. v. Potter, Tex. Civ.App., 143 S.W.2d 135, 136.

On the question of confiscation, treating the 3.77 acres as one tract with two wells already drilled thereon, in addition to the disparity in density as between this tract and the adjoining leaseholds, it was shown that the underground conditions, sand thickness, bottom hole pressure, well potentials, well allowables, etc., in this area were substantially the same; that up to August 1, 1937, this tract had produced 37,754 barrels of oil per acre, as against 7,795 barrels per acre produced from the offsetting leaseholds, a per acre advantage in favor of the 3.77-acre tract of 4.84 to 1. Likewise it had produced, with the two wells already situated thereon, 668 barrels per acre foot of sand thickness beneath it, as against 148 barrels per acre foot of sand thickness on offsetting leases, an advantage 4.51 to 1; and that the well here involved would greatly increase this disparity.

 It is now settled that no confiscation, as that term is used in the statutes and the rules of the Commission, results if the applicant has, with the wells already in operation, "been given a fair and equal opportunity with other producers on surrounding tracts within the drainage area to recover his fair share of the oil in place beneath his tract." Ward Oil Corporation v. Overton Refining Co., 139 S.W.2d 292, 293, writ refused; Edgar v. Stanolind Oil & Gas Co., Tex.Civ.App., 90 S.W.2d 656, writ refused. Under the uncontroverted facts of the instant case, the requirements of the law, without the permit here involved, have manifestly been more than met. The judgment of the trial court will therefore be affirmed.

Affirmed.

On Appellant's Motion for Rehearing.

Appellant, Mrs. Maud Whittington, in her separate motion for rehearing calls attention to the inaccuracy of our statement in the original opinion that the Railroad Commission brought suit in the Federal Court to set aside the injunctive order granted by that court on December 26, 1934. No independent suit was filed by the Commission; but such affirmative relief was sought by the Commission in that court through answer filed by the Commission to the suit as originally filed by Whittington. The result is the same, how-

ever, in either event. This correction is therefore made. With such correction said appellant's motion is overruled.

Overruled.