HARRY LANDA V. ALFRED W. ISERN ET UX.

No. 8083. Decided October 6, 1943.
(174 S. W., 2d Series, 310.)

456

*Seabury, Taylor & Wagner,* of Brownsville, and *Johnson & Rogers,* of San Antonio, for petitioner.

The Court of Civil Appeals erred in holding that petitioner's final judgment of foreclosure against respondents did not necessarily adjudicate that Landa, plaintiff in that suit, was a mere lien holder, and not the owner of the land during the existence of the lien, and such adjudication is not upon respondents in this case. Boyd v. Eikenberry, 132 Texas 408, 122 S. W. (2d) 1045; Bob's Candy & Pecan Co. v. McConnell, 140 Texas 331, 167 S. W. (2d) 511; Noblitt v. Barker, 97 S. W. (2d) 1010.

*Carter & Stiernberg,* of Harlingen, for respondents.

MR. JUDGE BREWSTER, of the Commission of Appeals, delivered the opinion for the Court.

Respondents, Alfred W. Isern and Meta Isern, sued E. C. Bacon, Valley Citrus Groves Company and petitioner, Harry Landa, in the district court of Cameron County, for damages for fraud in the sale of 20 acres of land in that county by Valley Citrus Groves Company to the Iserns. A verdict on special issues resulted in judgment for the Iserns against all defendants, ·jointly and severally. Only Landa appealed. The Court of Civil Appeals affirmed the judgment. 166 S. W. (2d) 948.

The Iserns alleged that prior to January 1, 1935, Landa owned land in Cameron County; that he and Bacon agreed that Bacon was to become his agent to sell this land in small tracts to purchasers from other states; that Bacon was to exercise his discretion as to prices and terms, but was to get "several hundred dollars per acre," from which he was to clear the land, plant it in citrus, defray sales expenses, and pay Landa $60.00 per acre or $20.00 per acre cash and get vendor's lien notes for the balance; that after Bacon had shown the land to a few prospective purchasers, Landa told Bacon he feared trouble with the purchasers if he, Landa, conveyed the land direct to them, so he wanted to deed it to some corporation through which title could pass, to conceal the fact that Bacon was selling the land for him; that the two then agreed that Landa would deed 150 to 200 acres at a time to a corporation designated by Bacon, which would not pay any cash but would execute notes and a deed of trust for $60.00 per acre; that Bacon designated Valley Citrus Groves Company, a corporation owned and controlled by him, which had no assets and never bought or sold any land but Landa's; that, under this agreement, by deed dated January 1, 1935, acknowledged August 29, 1935, and recorded October 2, 1935, Landa conveyed to that company 150 acres of land, including the tracts they bought, agreeing to release any part of it upon payment of $60.00 per acre; that Landa knew that neither Bacon nor his company had any assets but would have to use the proceeds of sales to pay expenses; that the company was a dummy organization to convey title from Landa and to conceal his ownership and shield him from responsibility for the fraud to be perpetrated in selling the land; that on August 14, 1935, they and Valley Citrus Groves Company made a written contract whereby they agreed to buy 10 acres of the land for $625.00 cash, a note for $625.00 due in 9 months, and vendor's lien notes for $1,250.00; that on January 17, 1936, they contracted for 10 more acres for $750.00 cash and a note for $750.00 due in one year; that each contract bound the company to convey the land by general warranty deed within 90

days and to furnish abstracts showing the land free of liens and title good in the company.

The Iserns further alleged that to induce them to execute these contracts and pursuant to a conspiracy between Landa and Bacon to defraud them, Bacon, for himself and as the agent of Landa, represented; (1) that the land enjoyed a permanant easement over a strip of land 100 feet wide extending to it from the Rio Grande River, for irrigation purposes; (2) that the company owned this strip in fee simple; (3) that, without bonding the land, it possessed all rights necessary to irrigate it as well as other lands in the Rio Grande Valley were; (4) that the company owned all equipment necessary for such irrigation; (5) that it owned in fee simple, free of liens, a lake for use as a reservoir in irrigating the land, permanent right to use which passed to the Iserns with their deed; and (6) that it owned in fee simple all the tract of which the 20 acres purchased was a part. They alleged that these representations were made with the express consent of Landa; that they were false and made as a material inducement to them to purchase the land, and that they relied thereon and would not otherwise have made the contracts; that Landa profited therefrom to the extent of $150.00 per acre, for which he was liable, under Art. 4004, R. S., 1925.

Landa answered that on January 1, 1935, he made an absolute, fee simple conveyance of the 20 acres of land, by warranty deed, to Valley Citrus Groves Company for $60.00 per acre and retained a valid lien to secure payment; that on July 16, 1938, he sued the Iserns, Bacon and the company in the district court of Bexar County to foreclose that lien; that the Iserns were duly served with process and appeared, and final judgment was rendered, adjudicating that he had sold the land to the company on January 1, 1935, and retained a valid lien; that said judgment became final without appeal and was a conclusive determination against the Iserns of all the facts upon which they rely in this suit and estops them now to assert facts contrary thereto.

By supplemental petition, the Iserns denied that Landa's deed to Valley Citrus Groves Company was bona fide, and reasserted that it was in pursuance of the agency and conspiracy between him and Bacon above described; that it was not delivered until after October 4, 1935, long after Bacon made the first sale to them on August 14, 1935; that when they contracted to purchase the first 10 acres, they took a written option to buy the second 10 acres and exercised it on January 17, 1936; that

they were unable to get the information as to the arrangement between Landa and Bacon until about November 12, 1938, when Bacon testified in a hearing on a plea of privilege in this case, and after Landa had foreclosed his apparent lien in the Bexar County suit.

At the trial the Iserns and Landa agreed that before the Iserns entered into the first contract of purchase Bacon made to them the five representations set forth above and numbered (1) to (5); that they were false; and that the Iserns relied on them in making the contracts. The jury found that prior to August 14, 1935, Landa "expressly or impliedly authorized" Bacon to make these five representations and additional representation No. (6), supra, that the Valley Citrus Groves Company owned in fee simple all the tracts of which the 20 acres in controversy was a part, free of liens, under an agreement made prior to August 14, 1935, that Bacon was to sell it by making one or more of the five representations, supra; that he authorized Bacon to make sales in the name of Valley Citrus Groves Company; that Landa benefited by these sales; that the deed from Landa to the company of date January 1, 1935, was not executed and delivered to Bacon prior to August 14, 1935, and was not a bona fide sale.

Does the judgment in the Bexar County suit estop the Iserns to maintain this suit? Landa contends that it does, because it adjudicated that he was merely a lienholder as to the land they bought, and not the owner. This suit being upon a different cause of action, the judgment in that suit estops the Iserns only as to those issues actually and necessarily litigated there which are essential to a judgment here. Where such issues do so coincide, however, they stand determined in this suit as they were adjudged in that suit. Cromwell v. Sac County, 94 U. S., 351, 24 L. Ed., 195; Harding Co. v. Harding 352 Ill. 417, 186 N. E. 152, 88 A. L. R.; 563, and the note at page 574. So the inquiry is whether any issues necessarily adjudicated in that case are essential to the cause of action asserted here.

As stated, Landa sued the Iserns, Bacon, Valley Citrus Groves Company and others in Bexar County to foreclose a vendor's lien, which he alleged he retained in a deed executed to Valley Citrus Groves Company on or about January 1, 1935, conveying 150 acres of land, including the 20 acres in suit, to secure notes for $9,400.00, executed as consideration for the deed and further secured by a deed of trust, all of even date. He alleged that the Iserns (and other defendants) "are claiming

some character of title or interest in and to the above described real property, or some part thereof, said right, title or interest claimed to have been acquired by, through or under the defendant, Valley Citrus Groves Company of Texas, or otherwise, the exact nature of which claims this plaintiff is unable to determine, but *which, in any event, are inferior to and subject to the plaintiff's vendor's lien and deed of trust lien* \* \* \*, *and plaintiff is entitled to have said liens established and foreclosed as against all of said defendants.*" (Italics ours.)

The judgment was that the land had "been conveyed by the said Harry Landa by warranty deed dated January 1, 1935, to the said Valley Citrus Groves Company of Texas"; that said deed retained the vendor's lien; that a deed of trust was executed further to secure the same, and that *both liens were valid and subsisting* and owned and held by Landa. It decreed that these liens *as they existed on January 1, 1935, be foreclosed as against* the company, *the Iserns and* the other defendants. Thus it was adjudicated that on January 1, 1935, Landa was not the owner of the land but was a bona fide lienholder.

These matters the district court of Bexar County had to adjudicate to dispose of the issues raised by Landa's suit and to give him full relief. Yet in this suit the Iserns contend, as the very core of their case, not only that these liens were taken in bad faith, but that they were spurious because there was no conveyance of title by Landa, his grantee being a mere dummy, a conduit by which to pass title from Landa while concealing the fact that he was the real owner. Such is the gist of their entire pleadings, including the supplemental petition, which they filed after Landa had pleaded the Bexar County judgment in estoppel. Thus would they circumvent the rule that the foreclosure judgment is conclusive as to the validity of Landa's liens and as to the bona fides of the transaction from which they arose. 26 Tex. Jur., p. 195; 42 C. J., p. 167, sec. 1778.

■ The adjudication that a bona fide lien on the land grew out of its conveyance to Valley Citrus Groves Company is fundamentally antagonistic to any theory that the lien was spurious because it arose out of a transaction reeking with fraud. The Bexar County suit established the one; this suit alleges the other. Obviously both cannot be true, yet each is clearly the foundation of the case in which it is asserted. Moreover, the adjudication in Bexar County that Landa conveyed the land "by warranty deed dated January 1, 1935, to said Valley Citrus Groves Company" cannot be harmonized with the jury finding

in this case that the same deed "was not executed and delivered to Bacon prior to August 14, 1935." Nor can the jury finding that Landa "expressly or impliedly authorized" Bacon to make the fraudulent representations as his agent be reconciled with the judgment of the Bexar County court that Landa did not own the land, but was a bona fide lienholder. Boyd v. Eikenberry, 132 Texas, 408, 122 S. W. (2d) 1045. Certainly it would be an incongruity to say that Landa was at once the owner of the land and the holder of a lien against it for his own benefit. Robinson v. Cleveland State Bank (Civ. App.), 282 S. W., 860 (er. Dism.)

Our conclusion is, therefore, that fundamental issues involved in the Bexar County suit are essential to the cause of action alleged here, and that their adjudication in that suit estops the Iserns to insist on a contrary determination of them in this case. The authorities are at one on this proposition. Hanrich v. Gurley, 93 Texas 458, 479, 56 S. W., 330; Houston Terminal Land Co. v. Westergreen, 119 Texas, 204, 27 S. W. (2d) 526; 24 Texas Digest, Judgment, key 725 (1) ; 34 C. J., p. 915, sec. 1325; 15 R. C. L., p. 973, sec. 450; Freeman on Judgments (5th Ed.), vol. 2, pp. 1462 et seq., secs. 692 and 693. And the rule is "universally applied, no matter how much injustice may be done by its application to a particular case." 15 R. C. L., p. 977, sec. 451.

■ We recognize that the Iserns had the legal right to prosecute their claim for damages in Cameron County, but the scope of their suit is limited by the superior rule, dictated by sound public policy, that essential issues cannot be twice litigated by the same parties, even in different causes of action. When it counters this rule, any second suit must fall, irrespective of its form. Mayfield Co. v. Rushing, 133 Texas, 120, 127 S. W. (2d) 185; Rio Bravo Oil Co. v. Hebert, 130 Texas, 1, 106 S. W. (2d) 242. Otherwise, the filing of another suit would be sufficient to nullify a solemn judgment rendered between the same parties on identical, essential issues. The Iserns could have asserted in the Bexar County suit that Landa was not entitled to any foreclosure against them because his liens were fictitious, but they failed to do so, hence the foreclosure of the liens there likewise forecloses the issue here. For an excellent statement of this principle in relation to cross-demands, see *Freeman on Judgments* (5th Ed.), vol. 2 p. 1669, sec. 787.

In this connection, the Iserns insist that they were privileged, as a basis for their suit, to affirm the contracts of sale. That is

.correct, but, in doing so, they affirmed conveyances from Valley Citrus Groves Company, not deeds from Landa, and such affirmance is not antagonistic to the Bexar County judgment.

■ The suggestion that Landa, as vendor, was the owner of the superior title until the lien was satisfied in no wise militates against our holding, because, as to the Iserns and everybody else but his grantee, Valley Citrus Groves Company, he was merely the mortgagee out of possession. Carey v. Starr, 93 508, 56 S. W., 324; Carroll v. Edmondson (Com. App.), 41 S. W. (2d) 64.

Citing Barker v. Temple Lumber Co., 120 Texas, 244, 37 S. W. (2d) 721, and other authorities, the Iserns argue that, although Landa may have made a valid conveyance to Valley Citrus Groves Company on January 1, 1935, the vendee defaulted in payment of interest due July 1, 1935, which enabled Landa to rescind the sale and to resell the land, without foreclosure; that, on August 14, 1935, Landa had the right to sell the 20 acres himself or by an agent. It is sufficient to say that this right of recission was personal to Landa, and he did not choose to exercise it. Rather, he resorted to foreclosure more than three years later, thus affirming the transaction; and it is not for the Iserns, who hold under his vendee, to say that he should have treated the conveyance as rescinded on July 1, 1935. See 27 R. C. L., p. 660, sec. 421.

The Iserns strenuously insist that, irrespective of the ownership of the land, or the date of delivery of the deed from Landa to Valley Citrus Groves Company, or the bona fides of that deed and of the liens foreclosed by Landa in Bexar County, they have an independent ground of recovery based on a conspiracy between Landa and Bacon "to sell the lands by means of Bacon's perpetrating the seven separate frauds which the parties agreed he would perpetrate on Isern" and Landa's authorization of Bacon to commit the frauds, from which Landa benefited. A study of their pleadings demonstrates that this proposition must be overruled because they do not plead any such ground.

To make this ground of recovery "independent," the Iserns would have to allege it in a manner fully consistent with the bona fides of the deed from Landa to Valley Citrus Groves Company and the liens arising therefrom, or they would have to allege it in a manner that would wholly disassociate it from those issues. In other words, when Landa pleaded those matters in estoppel, the Iserns could answer the plea only by a ground consistent with an effective conveyance from Landa on

January. 1, 1935, and a valid lien arising therefrom, or by alleging a ground wholly independent of that deed and that lien. Yet their answer was to "deny that Landa made a bona fide sale to Valley Citrus Groves Company," to allege that "Landa told Bacon that if Bacon made any such sales *Landa would deliver title*," and to charge that the deed from Landa to the company was not delivered "until some time after October 4, 1935, and long after Bacon had made the first sale to plaintiff on August 14, 1935, *under verbal authority from Landa to Bacon and under the conspiracy and agreement set out in plaintiff's petition.*" Then, as if to excuse their failure to raise these questions in the Bexar County suit, they say "they were unable to get the information as to the verbal agreements and conversations between Landa and Bacon until after the dispostion of cause No. B91503 in Bexar County, Texas, in which latter suit Harry Landa foreclosed his *apparent lien* on the lands," and, in a trial amendment filed on March 17, 1942, which is the last pleading they tendered, they allege that "after the filing of this suit the said Harry Landa, *as part of the plan and conspiracy* originally entered into between him and Bacon, *foreclosed the lien which he retained in the deed* * * and did so before plaintiffs were able to procure any proof of the conspiracy and plan in existence between Bacon and Landa." (Italics ours.) And they make these allegations in face of the fact that the substance of their original petition, filed June 15, 1938, a month and a day before the Bexar County suit was filed, is that Landa and Bacon entered into a conspiracy to defraud them and others by a spurious transfer of title to Valley Citrus Groves Company, which was to serve as a conduit of title belonging, in truth, to Landa.

Thus, it is apparent that this alleged ground of recovery on the theory of conspiracy is neither independent of, nor consistent with, the adjudications in the Bexar County suit. On the contrary, it contradicts them. It proceeds, not on the theory that the liens foreclosed by Landa in Bexar County were good, but that they were bad; not on the theory that they were retained in good faith, but that even their foreclosure was only part of a conspiracy to defraud; not on the theory that Landa deeded the land on January 1, 1935, but that he deeded it some time after August 14, 1935; not on the theory that this deed conveyed the title, but that it was spurious, leaving the title and ownership in Landa. In other words, this alleged ground of recovery not only ignores the rule that the Bexar County judgment imports absolute verity to every proposition essential to its existence, but it proceeds on a positive denial of essential elements thereof. Therefore, as pleaded, it is not an independent ground

of recovery, and it is not sufficient to render inapplicable the principle of estoppel arising from that judgment.

It follows that the trial court should have granted Landa's motion for an instructed verdict. The judgments below are reversed, and judgment is rendered for petitioner, Harry Landa.

Opinion adopted by the Supreme Court October 6, 1943.