**WITHERS et al. v. REPUBLIC NAT. BANK OF DALLAS et al.**

No. 4660.

Court of Civil Appeals of Texas. Beaumont.

July 12, 1951.

Rehearing Denied April 2, 1952.

A. M. Huffman, Beaumont, Sam G. Croom, Houston, for appellant.

Murfee & Crystal, Houston, F. K. Dougharty and P. C. Matthews, Liberty, for appellee.

WALKER, Justice.

The action is in trespass to try title; the land in suit is in the Romayor grant in Liberty County. Not all of the parties to the suit are parties to the appeal, but our discussion is limited to the parties to, and the issues raised on, the appeal.

The appellants are three of the defendants, namely, C. I. Withers, Harvey Collins and B. A. Skipper. Defendant Withers was also a cross-plaintiff, the cross-defendants being the plaintiff and another defendant, P. A. Racki. Defendant Skipper claims title under defendant Withers by virtue of a deed to him from Withers, dated July 30, 1945. The nature of defendant Collins' claims is not made clear but the parties have treated him as having a joint interest with the other appellants and we assume that he, too, claims under defendant Withers.

The appellees are the plaintiff (and cross-defendant to Withers' cross action), the Republic National Bank of Dallas, suing as trustee and independent executor of the estate of Wirt Davis, deceased, and the aforesaid defendant P. A. Racki. There is no issue between plaintiff and Racki on this appeal; and Racki is a party to this appeal only in his capacity of a cross-defendant to Withers' cross action.

With the appellee Racki, named as appellees with him in his brief and asserting a joint interest with him as appellees are two other persons who were also defendants to plaintiff's suit, namely, R. D. McDonald and Mae C. McDonald, individually and as independent executrix of the estate of Arch McDonald. As we construe the record, these two persons are not parties to the appeal and they will be disregarded except as the discussion of the points of error asserted against Racki requires that they be mentioned.

The petition contained the formal allegations of trespass to try title and also alleged the several statutes of limitation. The plaintiff, Republic National Bank as aforesaid, prayed recovery of title to and possession of a tract of 1,399.5 acres of land (to which we shall refer as 1,400 acres) in the shape of a parallelogram, located in the southeastern corner of that part of the Romayor grant in Liberty County known as the Hanrick League. From the southeastern corner of the Hanrick league as

the 1,400 acre tract is described in the petition, the eastern line of this tract extends northward 1,425 varas along the eastern line of the Romayor grant, and the southern line of this tract extends westward 5,548 varas along the southern line of the Hanrick league. The plaintiff alleged that the southeastern and southwestern corners of this 1,400 acres were at certain identifiable points on the ground, but, in the alternative, that the 1,400 acre tract was to be located on the ground wherever the relevant corners and lines of the Hanrick league were located.

Appellee Racki, defendant to plaintiff's suit and cross-defendant to appellant Withers' cross action, filed a general denial and a plea of "not guilty" in response to the petition and also, to the cross action. His chain of title is not in proof; but the evidence shows that he claims title to a tract of 531.17 acres in the shape of a parallelogram located in the northeastern corner of the Hanrick league, within the Romayor grant. This claim of title is based upon a conveyance to him from R. D. McDonald, Arch McDonald and L. A. McDonald dated December 4, 1930. Racki claims that this tract is so located on the ground that it adjoins the northern line claimed by the plaintiff for the northern line of the 1,400 acre tract sued for by plaintiff.

Appellants Withers, Collins and Skipper were, as we have stated, defendants to the plaintiff's suit. Skipper filed an answer in which he plead "not guilty" and next, an allegation adopting the defensive allegations of Withers. He prayed for no affirmative relief and on the pleadings, the only issues on this appeal to which he is a party run between him and the plaintiff. Appellants Withers and Collins, with two other defendants who disclaimed, filed an answer in which they plead "not guilty" and the several statutes of limitation. Withers and Collins also filed a cross action against the plaintiff and Racki; but Collins dismissed his cross action. Withers, as cross-plaintiff, plead the formal allegations of trespass to try title and the several statutes of limitation, and asserted title to the tract for which plaintiff sued. In the alternative, he asserted title to four tracts described by

metes and bounds, which, as described, covered 620 acres, more or less. These four tracts formed an unbroken block of land, most of which lay upon the eastern end of the 1,400 acres located as plaintiff claimed; but a part of two, entitled "first tract" and "second tract" in Withers' cross action, extended a short distance beyond the north line claimed by plaintiff for the 1,400 acre tract and into the tract claimed by Racki, as Racki located that tract.

By supplemental petition, plaintiff plead as res judicata and estoppel a prior judgment of the trial court rendered in March, 1913, in Cause No. 4348, styled Camilla G. Davis v. Henry H. Hughes et al., which is discussed hereinafter. Appellants Withers and Collins, as cross-defendants, filed a supplemental answer in response.

The trial court instructed the jury to return a verdict in behalf of plaintiff against appellants Withers, Collins and Skipper for the 1,400 acre tract of land sued for by plaintiff, described by metes and bounds and fixed and located on the ground as plaintiff alleged it to be. The trial court also instructed the jury in general terms, without referring to any land, to return a verdict against Withers on his cross action against the plaintiff and Racki. The jury returned a verdict as instructed.

On this verdict the trial court rendered judgment in behalf of plaintiff against appellants Withers, Collins and Skipper for the 1,400 acres sued for by plaintiff, describing it by metes and bounds and by reference to objects on the ground as the plaintiff had alleged it to be and as it had been described in the trial court's charge to the jury.

The trial court also rendered judgment in general terms, without referring to any land, that Withers take nothing on his cross action against the plaintiff and Racki.

From this judgment Withers, Collins and Skipper have appealed, assigning seven points of error for reversal.

## Conclusions of Fact

The principal issue between the parties to this appeal is one concerning the location of the tract claimed by plaintiff Bank. This issue has grown out of the descrip-

tions of the tracts conveyed in documents contained in plaintiff Bank's chain of title. Appellants have also raised the issue of location against appellee Racki under Point 2; but the location of Racki's tract is not material on this appeal, for reasons stated in our adjudication of Point 2. The following statement from the proof shows the source and nature of the issue of location and the contentions of the parties pertaining thereto.

All of the land in suit is a part of the tract of six leagues which was granted to Joaquin Fernandez de Romayor on April 25, 1831 and in that part of this grant which lies east of the Trinity river. This grant lies partly on one side of the river and partly on the other. The part east of the river apparently covers more than three leagues of land; but the proof does not show how much of the land lies west of the river. The parties have located the eastern line of the Romayor grant, from the southeastern corner to the northeastern corner of the grant, and have located the northern line of the Romayor grant from the northeastern corner westward to the river. No issue of fact exists concerning the location of these lines and corners. The field notes of the Romayor grant do not state the location of the river, but the map of appellants' surveyor Boyles, (which is in evidence and which may be taken to be a convenient summary and expression of his survey, made in 1949) shows that he found the length of the northern line from the northeastern corner to the river to be 11,550.61 varas and the course of this line from this corner to be north 88 deg., 20 min. and 30 sec. west; and this map shows that he found the eastern line of the grant to be 7,573.91 varas long from the southeastern corner to the northeastern corner, the course from the southeastern corner being north 1 deg., 44 min., 40 sec. east. There is some evidence tending to show that the river lay farther west in 1843, at the time of the partition between McKinney and Menard hereinafter mentioned, than it lay in 1949 when Boyles made his survey.

Romayor conveyed this grant to Thomas F. McKinney and Michael B. Menard by a deed dated April 10, 1832; and by cross deeds dated February 1, 1843, McKinney and Menard partitioned the grant.

The part set aside to McKinney is described, in effect, as the northern two leagues of that part of the Romayor grant which is east of the Trinity river. The location of the south line of this tract was not described with reference to objects on the ground; it must be determined by a calculation based upon the area of the tract set aside to McKinney.

The part set aside to Menard was all of the Romayor grant west of the river and that part of the grant east of the river which was south of the part set aside to McKinney, and the south line of McKinney's part was described as it was in the deed to McKinney. This part is described as being four leagues.

There is no evidence that this partition was surveyed on the ground when made, and the earliest surveys in proof which purport to locate on the ground the boundaries of the two leagues, set aside to McKinney were not made until many years after the date of the partition.

The 1,400 acre tract sued for by plaintiff Bank is in the southeastern corner of a part of the Romayor grant which is called the Hanrick league; this is the southernmost league of the land set aside to McKinney in the partition. The Hanrick league apparently takes its title from Edward Hanrick, to whom it was conveyed by McKinney by a deed dated June 18, 1855. In this deed the land conveyed to Hanrick is described only in general terms as "the lower or south one" of the two leagues set aside to McKinney, and these two leagues are described as in the partition deed to McKinney.

Plaintiff is vested with the title of Edward Hanrick, and thus with title from the sovereignty of the soil, to a 1,400 acre tract in the southeastern corner of the Hanrick league, bounded by the eastern line of the Romayor grant and the southern line of the Hanrick league, and by western and northern lines parallel to those two. The dimensions of this tract are those stated in the petition, namely, 1,425 varas northward from the southeastern corner,

and 5,548 varas westward from the· south-eastern corner of the Hanrick league. The first description of this 1,400 acres is in the deed from E. G. Hanrick (an heir of the aforesaid Edward) to A. B. Lawrence dated August 11, 1877. This deed is in plaintiff Bank's chain of title. The only objects on the ground called for in the field notes in this deed are a stake and an undescribed tree at the southeastern corner of the Hanrick league, concerning which there is no evidence, and some improvements of A. B. Lawrence. The proof locates the place where Lawrence's dwelling stood; it is a few varas south of the south line claimed by plaintiff Bank for the 1,400 acre tract in land set aside to Menard in the partition of 1843.

The only other line in plaintiff Bank's chain of title which describes said plaintiff's 1,400 acre tract with reference to objects on the ground is the prior judgment of the trial court in suit No. 4348, which is described hereinafter.

The chain of title of appellee Racki is not in proof, but the tract claimed by him is described in the deed to him from R. D. McDonald et al., dated December 4, 1930, mentioned above. No objects on the ground are called for in the description of this tract; only lines and corners of the Hanrick league are called for. The Hanrick league must be located in order to locate this tract. The tract is located in the northeastern corner of the Hanrick league and as described, covers 531.71 acres, in the shape of a parallelogram. There is no issue between plaintiff Bank and the appellee Racki, who agree upon the location of the Hanrick league. Appellee Racki claims that his tract is located immediately north of and adjoining the tract claimed by the plaintiff Bank.

Appellants' claims of title are summarized hereinafter.

As we have stated, appellants argue that the trial court has located the 1,400 acre tract sued for by the plaintiff Bank too far south. Appellants say that the location of this 1,400 acre tract depends upon the location of the Hanrick league, of which it is a part, and that the location of this league depends upon the location of the south line of the two leagues set aside to McKinney in 1843, it being the southern league of those two. Thus, the location of plaintiff Bank's 1,400 acres depends on the location of the south line of McKinney's two leagues. Appellants say further that these two leagues are to be located just as the field notes of the tract set aside to McKinney in the partition deed of 1843 direct, and their surveyor Boyles has done this and has delineated his findings and conclusions upon his map. Plaintiff Bank does not dispute the accuracy of his work. Boyles' south line is, at the eastern line of the Romayor grant, about 500 varas north of the south line claimed by plaintiff Bank for the south line of the 1,400 acre tract.

Plaintiff Bank adduced evidence showing the location claimed for the 1,400 acres by plaintiff. This location is evidenced by reputation, but it appears to be founded upon a survey made by J. N. Dark, County Surveyor of Liberty County, in September and October, 1885. There was evidence of the survey, from the surveyor's records, and this evidence shows that in locating the boundaries of the two leagues set aside to McKinney and the south line of the Hanrick league, Dark disregarded the call for the river as the western line of the part set aside to McKinney which was made in both of the partition deeds of 1843. Instead, Dark located the northwestern corner of the McKinney tract at a point midway upon the northern line of the Romayor grant as the length of that line (20,000 varas) is stated in the field notes of the grant. Dark's northwestern corner of the McKinney tract was 10,000 varas west of the northeastern corner of the Romayor grant, on the northern line of the grant. This location put the western line of McKinney's tract over 1,000 vrs. east of the river and left, according to Dark, an area between the river and the western line of McKinney's tract which amounted to 1,971 acres. This survey locates this south line of the 1,400 acres much farther south than would a compliance with the field notes in the partition deed to McKinney; the difference between the parties to this appeal has been stated.

Dark's reason for departing from the field notes in the partition deed to Mc-Kinney is not clear.

Plaintiff's surveyors Partlow and Compton have located the southeast corner of the Hanrick league as fixed by Dark, and on this have located the 1,400 acres. This location was claimed by plaintiff Bank and was adopted by the trial court.

We need not discuss these two lines of evidence further. For plaintiff also contends that the matters in dispute between plaintiff Bank and appellants in this suit were adjudicated in a prior suit in the trial court adversely to appellants. This prior suit was No. 4348, styled Camilla G. Davis v. Henry H. Hughes, et al.

The record before us shows, from the record in No. 4348, the following items: The pleadings of the parties; the trial court's charge to the jury; the judgment rendered, which quotes the verdict; a statement of facts, made up and certified according to law; a motion for a new trial; and the order concerning the motion for new trial.

The plaintiff in No. 4348 was Mrs. Camilla G. Davis, who was the mother of Wirt Davis, deceased, and a predecessor in title of the plaintiff Bank. The action was in trespass to try title and Mrs. Davis recovered judgment in March, 1913 for the land for which she sued.

The persons under whom appellant Withers (it will not be necessary to refer to the other appellants whose interest is joint with Withers) claims title were either parties defendant to No. 4348 or else took conveyance from defendants to that suit while it was pending.

Thus O. H. Gay and W. T. Collins, who claimed title under Gay, were defendants in No. 4348. Except to that part covered by land recovered by plaintiff in No. 4348, Withers has acquired Collins' claim of title under a deed to him from Collins conveying a specific tract, made after the judgment in No. 4348. This tract is "4th tract" described in Withers' cross action. Withers also claims title under O. H. Gay, independently of Collins, by virtue of deed from the following: (a) The widow and heirs of

O. H. Gay; and the widow and heirs of one described as an heir of Gay's; (b) Mrs. Letha V. Munson, to whom Gay conveyed an undivided interest in his claim of title while No. 4348 was pending. The proof in No. 4348 shows that O. H. Gay's claim of title was founded upon a deed to him from Peter J. Menard, dated June 20, 1874, which purported to convey the entire Romayor six league grant. Except to the land recovered by plaintiff in No. 4348, the conveyances to Withers have probably vested him with Gay's claim of title to the specific tract conveyed to him by W. T. Collins, and, of course, with Collins' claim to that tract, and have vested him with most of O. H. Gay's claim to the balance of the Romayor grant. Plaintiff Bank is vested with Gay's and Collins' claim of title to the land recovered by the plaintiff in No. 4348.

Further, J. H. Hughes and Henry H. Hughes were parties defendant to No. 4348, claiming each a tract of land by virtue of adverse possession. Withers has acquired an interest in their claim from and under these two defendants, through deeds from them to Dabney, who was their lawyer in No. 4348, made while No. 4348 was pending. The tract claimed by J. H. Hughes is "1st tract" in Withers' cross action and that claimed by Henry H. Hughes is "2nd tract" in Withers' cross action. Under the judgment in No. 4348, which is an element of plaintiff Bank's claim of title, said plaintiff acquired all of the claims made by the two defendants Hughes to land which was covered by the land awarded to the plaintiff in No. 4348. This was all of the Hughes tract except that part described in the deed out of Dabney.

Further, Henry T. Landers, Joe Moore and William Emanuel were defendants to No. 4348. Moore and Emanuel claimed a tract of land by virtue of adverse possession, deriving their claim of title from the said Landers under a deed from him to them. Withers asserts an interest in this claim by a deed from the widow and heirs of Joe Moore. This tract is referred to in No. 4348 as the Landers tract and it is "3rd tract" in Withers' cross action; it was recovered by plaintiff in No. 4348, and the plaintiff Bank actually owns the claims

of title of Landers, Moore & Emanuel.

These comments summarize the only paper titles held by appellants to the land in suit which were put in proof.

No title (other than that under O. H. Gay) to the tract described in appellant Collins' cross action was exhibited, but in Withers' deed to appellant Skipper dated July 30, 1945, Withers conveyed a one-half interest in this tract to Skipper. This is "5th tract" in this deed.

We have stated that No. 4348 was an action in trespass to try title. The cause was tried on the second amended original petition; and in this pleading, the plaintiff Mrs. Davis sued for three tracts of land which were described by metes and bounds. She alleged that these three tracts were parts of a 1,400 acre tract in the southeastern corner of the Hanrick league; this 1,400 acres is the same 1,400 acre tract to which plaintiff Bank claims title. The statement of facts in No. 4348 shows that the only title exhibited by the plaintiff was a title to this 1,400 acres. In substance, plaintiff Mrs. Davis described the Hanrick league as the southern league of the two northern leagues off that part of the Romayor grant east of the river, and she described the 1,400 acre tract with reference to the Hanrick league as it was described in the deed to A. B. Lawrence, mentioned above. The three tracts sued for by her were as follows:

(1st) The Landers tract, hereinabove mentioned. This tract was described as "148 acres described in the amended answer of H. L. Landers" and then by objects on the ground, the south line of the tract is described as being in the south line of the Hanrick league. However, this tract is not described with reference to the 1,400 acres, and proof extraneous to Mrs. Davis' title papers was necessary to show that the Landers tract was within the 1,400 acres sued for by Mrs. Davis. Incidentally it is evident from the balance of the petition and from the record in No. 4348 that the call for the south line of the Hanrick league made in this description of the Landers tract was not intended to fix the location of the 1,400 acres as claimed by the plaintiff

Mrs. Davis; according to the description of the third tract sued for by her Mrs. Davis fixed the south line of the 1,400 acres, which was the south line of the Hanrick league, 565 varas south of the south line of the Landers tract.

(2nd) A tract 880 yards square, which was claimed by the defendant W. H. Kelly, and the petition refers to Kelly's answer. This tract was described in the petition and in Kelly's answer, with reference to certain objects on the ground, namely, the G. C. & S. F. right of way and the Jno. Hoover saloon building, which are not called for in the description of the 1,400 acre tract; and proof extraneous to the title papers of the plaintiff Mrs. Davis was necessary to show that this tract was within the 1,400 acre tract.

(3rd) The third tract sued for by Mrs. Davis was described with reference to the lines and corners of the 1,400 acres, and also with reference to the south line of the Landers tract. The beginning corner was the southeastern corner of the Hanrick league. Thence the boundary ran north along the eastern line of the Romayor grant to the "N.E. corner" of the 1,400 acres; thence west along the north line of the 1,400 acres tract 2,228 vrs. to "cor."; thence south 840 vrs. to "cor." thence east with the south line of the Landers tract 1,100 vrs. to "cor."; thence south 565 vrs. to "Cor. on S.B. line of said 1,400 acre tract"; thence east along the south line of the 1,400 acre tract to the place of beginning. In her description of the 1,400 acres, plaintiff very plainly described its south line as being in the south line of the Hanrick league.

It is unnecessary to describe in detail the answers filed by the defendants in No. 4348. A specific tract was claimed by defendant J. H. Hughes, by defendant Henry H. Hughes, by H. T. Landers and Joe Moore and William Emanuel, and by W. H. Kelly; and the answers of these defendants, in addition to formal pleas usually made by way of answer in a trespass to try title suit, contained a disclaimer of the land sued for except the specific tract claimed by the particular defendant. Defendants O. H. Gay and W. T. Collins, with another

defendant, Harris Gay, plead "not guilty" and then by way of cross action asserted title to all of the land described in the petition except that claimed by their co-defendant W. H. Kelly. When this pleading was filed, plaintiff had on file a petition in which she sued for the entire Hanrick league. Plaintiff answered this cross action by a supplemental petition.

Appellants' surveyor Boyles has located on the ground and has marked upon his map, which is in evidence, the several tracts claimed in No. 4348 by the defendants J. H. Hughes, Henry H. Hughes, and the Landers group, namely, H. T. Landers, Joe Moore and William Emanuel. He has also marked upon his map the locations of the 1,400 tract claimed for that tract by the appellants and by the plaintiff Bank. This map may be taken as a convenient summary and expression of the evidence concerning the location of all of these various tracts, and according to this map, the Landers tract is within the 1,400 acre tract, whether appellants' theory or plaintiff Bank's theory concerning the location of the 1,400 acres be accepted. The two Hughes tracts extend a short distance above the north line of the 1,400 acres as claimed by the plaintiff Bank and a somewhat greater distance above the north line of the 1,400 acres as fixed in the judgment rendered in No. 4348, but about three-fourths of these tracts lies within the 1,400 acres as plaintiff Bank locates the 1,400 acres. The proof has located the G. C. & S. F. right of way and the site of the Hoover saloon building which were called for in the description of the W. H. Kelly tract; and the right of way and the site of the saloon are marked upon the map made by plaintiff's surveyor Partlow. This map is in evidence and no issue of fact exists concerning the location of the railroad and the site of the saloon. As Mr. Partlow has reconstructed the location of the Kelly tract, the southern line of the 1,400 acre tract, as located by the plaintiff Bank, is 17 varas south of the center of the site of the saloon building, so that the location given the south line of the 1,400 acres must correspond with, or be very near, the location of the south line of the Kelly tract. A question exists concerning Mr. Partlow's location of the western line of the Kelly tract. When the description of the Kelly tract is applied to the ground, a latent ambiguity respecting the location of the western line is created by a call for distance between the right of way and the saloon building. In reconstructing the Kelly tract, Mr. Partlow has solved this ambiguity by giving effect to the call for distance and by disregarding the call for the right of way; this puts the western line of the Kelly tract either in or almost in the western line of the 1,400 acres. If the call for the right of way be given effect, the western line of the Kelly tract will be some 400 yards east of the western line of the 1,400 acres. However, this uncertainty regarding the location of the western line of the Kelly tract is immaterial because the parties to this appeal do not dispute the location of the eastern and western lines of the 1,400 acre tract except with reference to the location of the southern line of said 1,400 acres.

Although the plaintiff Mrs. Davis did not sue for all of the 1,400 acre tract described in her petition, the statement of facts in No. 4348 shows that the only tract to which Mrs. Davis proved title was the 1,400 acre tract and further, that she proved and relied on the same chain of title from the sovereignty of the soil that plaintiff Bank proved and relied on in the case at bar. Mrs. Davis did not exhibit any other title to the three tracts for which she sued, and the statement of facts in No. 4348 thus shows very clearly that it was under this chain of title to the 1,400 acres that she claimed title to the three tracts for which she sued. As we have stated, Mrs. Davis was a predecessor in title of plaintiff Bank.

Defendants J. H. Hughes and Henry H. Hughes made no proof, and the judgment shows that the issues between these defendants and plaintiff were settled by agreement.

Defendants Landers, Moore and Emanuel adduced proof of adverse possession of the Landers tract. The testimony of Landers shows that he had the Landers tract surveyed by one House shortly after Landers took possession of the tract in 1906. The description of the Landers tract made in the petition is traceable to this survey by House, and Landers' testimony shows that

the call made in this description for the south line of the Hanrick league involved a supposition. Landers testified that the tract was on the "middle league", (which is the Hanrick league) and under the theory of either the appellants or the appellees it is, as we have stated, located upon the 1,400 acres claimed by plaintiff Bank.

M. C. Rye testified that he had assisted George W. Davis, who was the husband and sole devisor of the plaintiff Mrs. Davis (and a predecessor in title of the plaintiff Bank) to run out on the ground the south line of the Hanrick league in 1877, while making a survey of 640 acres for A. B. Lawrence. He said that this line ran between Lawrence's crib on the south and Lawrence's cotton patch on the north and that Lawrence's houses were south of the line. (This testimony is consistent with the location given the south line of the Hanrick league by the plaintiff Bank.) He testified also that the Landers' improvements were on the middle league of the Lawrence improvements, and that the land claimed by Hughes and Collins was on the middle league and was east of Landers. The record in No. 4348 contains no description of the land claimed by Collins; but the proof in the case at bar shows that O. H. Gay had conveyed to Collins, while No. 4348 was pending, 200 acres of land, to be selected by Collins but to be surveyed on the east line of the Romayor grant, and to include Collins' improvements.

Defendant Gay attempted to prove title under M. B. Menard, McKinney's co-tenant, by virtue of a deed from M. B. Menard to Peter J. Menard, made in 1840 and before the partition of 1843, conveying four leagues of the Romayor grant, to be sold by the grantees to pay some debts of the grantor. For title out of Peter J. Menard, Gay proved a deed to him by a Peter J. Menard which was dated some 34 years after the deed of trust to Peter J. Menard; this deed to Gay was in fact a gift and it purported to convey the entire Romayor grant. Appellant Withers attempted to prove this very chain of title in the suit at bar, but the deed to O. H. Gay from Peter J. Menard was excluded.

Defendants also made some effort to show that Mrs. Davis' chain of title did not cover the land claimed by defendants. Some proof offered by defendants toward this end was admitted; but finally, other proof offered for that purpose was excluded. The record pertaining to these matters is lengthy and will not be restated. As we construe this record, the trial court, in excluding this evidence, did no more than sustain specific objections which were made by plaintiff to the materiality and competency of the particular pieces of evidence which were offered from time to time by the defendants. The principal objection made by plaintiff was that the proof offered was immaterial and irrelevant, which we construe as meaning that it was immaterial and irrelevant to the issue upon which it was offered, but plaintiff also objected to some of it as being hearsay and that the particular witness was being questioned about proof which had already been excluded. Plaintiff never contended that the defendants had no right to offer proof of any kind that the land in suit was not covered by the plaintiff's chain of title. Finally, while an agent of the plaintiff, namely, L. T. Sloan, was under examination, the plaintiff stated that as to anything this witness knew of "those surveys, lines and boundaries, we have no objection." After the statement just quoted, the defendants made no effort to adduce further proof of location. It is to be said of all of the proof on that issue tendered by them that it was documentary and circumstantial; they made no effort to locate on the ground any of the lines in suit by the testimony of persons who knew the boundaries of those tracts. As we construe the record, the issue, whether plaintiff's chain of title covered the land for which he sued, was never excluded by the trial court.

The trial court submitted a charge to the jury which was limited to the issues between the plaintiff and those defendants other than J. H. and Henry H. Hughes.

In this charge, the trial court instructed the jury that—"the record to the title to the land in controversy is in the plaintiff * * and the plaintiff is entitled to recover all the land sued for unless to the extent she

may be defeated * * * by the limitation of 10 years set up by * * * defendant Landers and those claiming under him, Joe Moore and William Emanuel. You will therefore without inquiring return a verdict in favor of * * * plaintiff * * * against * * * defendants W. H. Kelly, O. H. Gay, Harris Gay and W. T. Collins." The trial court then submitted the question of limitation title as between the Landers group of defendants and the plaintiff.

The jury returned a general verdict in favor of the plaintiff against all of the defendants referred to in the trial court's charge.

On this verdict and on an agreement between plaintiff and the defendants J. H. and Henry H. Hughes, the trial court rendered judgment in March, 1913 as follows: The judgment described this agreement between the plaintiff and the defendant Hughes as one that "the plaintiff is to recover the lands in controversy described in plaintiff's petition from said defendants Hughes." It was adjudged that plaintiff "do have and recover of the defendants Henry H. Hughes —and J. H. Hughes, the lands described in her second amended original petition," and then following this is the description used in the petition, describing first the two leagues set aside to McKinney, and then the 1,400 acre tract in the Hanrick league, and then the third tract sued for by plaintiff, namely, the tract off the eastern end of the 1,400 acres, which had been described with reference to lines and corners of the 1,400 acres. This tract off the eastern end of the 1,400 acres is not marked upon the maps of the parties to this suit; but it can be located upon the ground by the call made for the south line of the Landers tract, which Boyles' map shows and which Boyles located on the ground. By scaling Boyles' map, the location of the northern and southern lines of this tract can be located upon the maps, and this process placed these lines a few varas south of the corresponding lines as located by the plaintiff Bank and as fixed by the trial court's judgment. It is apparent that in locating the 1,400 acres, the plaintiff Bank has disregarded the variances between the judgment in No.

4348 and that testified to by Partlow and Compton, but the variances are slight.

The next adjudication is a general one in behalf of plaintiff against defendants H. T. Landers, Joe Moore and William Emanuel and the defendants W. H. Kelly, O. H. Gay, Harris Gay and W. T. Collins. As against all of these defendants, the plaintiff was awarded the three tracts of land described in the petition. The first tract is described generally as "that certain tract of * * * 160 acres of land described in the answer of W. H. Kelly" and then by the field notes appearing in Kelly's answer. This was the second tract described in the petition. The second tract mentioned in the judgment is that part of the 1,400 acres which is described with reference to the lines and corners of the 1,400 acres, off the eastern corner of the 1,400 acres; it was the third tract sued for in the petition and plaintiff had taken judgment against the defendants Hughes for his tract. The description of this tract begins with the words: "A tract of land, a part of * * * 1400 acre tract described in plaintiff's petition," and then follow the field notes of this tract which were used in the petition and in that part of the judgment against the defendants Hughes. The description of the two leagues set aside to McKinney and of the 1,400 acre tract which appear in the petition and which had already been made in that part of the judgment awarding plaintiff title to this tract against the defendant Hughes were not repeated but was obviously a part of the description, at least by reason of the reference to the petition. The third tract awarded to plaintiff is thus described as: "That certain tract of 148 acres described in the amended answer of H. L. Landers on the 7th day of September, 1911," and then follow the field notes of this tract as in the petition (it was the first tract sued for in the petition). The record contains no answer of the date stated. The answer of Landers, Moore and Emanuel which is in the record is entitled "first amended original answer" and it must have been the answer referred to in the judgment; this pleading refers to a deed from Hughes to Landers for a description of the tract. This deed was in proof and the field

notes used in the judgment are (with some omissions) those used in that deed and are also those used in the original petition.

It is to be noted that the judgment did not describe or mention the two tracts described in the answers of J. H. and Henry H. Hughes, and that the judgment did not fix the location of the land covered by plaintiff from these defendants with reference to these two tracts. The proof made in the case at bar does show the location of the two Hughes tracts and does contain information from which the tract recovered by plaintiff from the defendants Hughes can be located with reference to the two Hughes tracts. As we have pointed out above, it appears from this evidence that the plaintiff did not recover all of the two Hughes tracts; these tracts extended a short distance above the northern line of the tract awarded to plaintiff. The location of the northern line of the tract awarded to plaintiff must be approximated by scaling Boyles' map, but this process shows that this line is a short distance south of the north line of the 1,400 acre tract as located by the plaintiff Bank.

A motion for new trial was filed by the defendants other than the defendants Hughes. The first ground assigns as error that the evidence raised the issue, whether the land sued for by plaintiff "included the land that all of the defendants in their answer claimed by their respective pleas." The fifth ground assigns as error that the trial court erred in excluding testimony offered to show that the land claimed by defendants was not that for which the plaintiff had sued.

### Opinion.

The principal issue raised on this appeal is one of title to land as title depends upon the location on the ground of the land claimed. Appellants say that the 1,400 acre tract sued for by plaintiff Bank should be located about 500 varas north of the place where the trial court has located this tract. The parties do not dispute the location of the eastern and western lines of the 1,400 acre tract except as this is affected by the location of the southern line; and no issue of fact exists concerning the dimensions, or the courses of the lines, of the 1,400 acre tract.

This issue of location is raised between appellants and the plaintiff Bank by appellants' Point 1 and 3 and by plaintiff Bank's Counter Point 1. We have concluded that, as between plaintiff Bank and the appellants, the location on the ground of the 1,400 acres sued for by plaintiff Bank has been fixed and determined by the judgment rendered in No. 4348, as have all claims of title except that founded upon adverse possession begun since the judgment was rendered; and we sustain plaintiff Bank's Counter Point 1 and overrule appellants' Points 1 and 3 on the following grounds:

■■ (1) Plaintiff Bank is the successor in title of, and is thus privy in interest to, the plaintiff in No. 4348; and appellants are successors in title of, and are thus privy in interest to, various defendants in No. 4348, all as hereinabove related, within the meaning of the rule stated in Cain v. Balcom, 130 Tex. 497, at page 500, 109 S.W. 2d 1044. The judgment in No. 4348, rendered in behalf of the plaintiff against the defendants can thus be invoked by plaintiff Bank against appellants under the principles of res judicata and estoppel by judgment. Cain v. Balcom, supra; State v. Ortiz, 99 Tex. 475, 90 S.W. 1084; and other decisions cited hereinafter. As a matter of fact, the judgment in No. 4348, being one for title to land, rendered in a trespass to try title suit, divested the defendants of the claims of title then held by them to the land which was awarded to the plaintiff, and vested said plaintiff with the ownership of those claims of title to that land, and as against those defendants the judgment was, in effect, a muniment of title in behalf of the plaintiff Bank. Campbell v. McLaughlin, Tex.Com.App., 280 S.W. 189; Taylor v. Higgins Oil & Fuel Co., Tex.Civ.App., 2 S.W.2d 288.

■■ (2) Since the 1,400 acre tract sued for by plaintiff includes the land recovered by the plaintiff in No. 4348, the cause of action in this suit coincides in part with the cause of action asserted by the plaintiff in No. 4348; and the judgment in No. 4348 is thus as against appellants res ju-

dicata of the title to the lands which were recovered by the plaintiff in No. 4348, except as to claims of title not adjudicated by that judgment. No title independent of that judgment was proved by appellants. This judgment, in No. 4348 is res judicata as to the location of the land described therein as well as of the title otherwise; for as we have stated, this judgment described the land awarded to the plaintiff so that it can be located on the ground.

However, as to that part of the 1,400 acre tract sued for by the plaintiff Bank which was not sued for by the plaintiff in No. 4348, the cause of action asserted by the plaintiff Bank differs from that asserted by the plaintiff in No. 4348, and the plaintiff Bank must invoke the principle of estoppel by judgment if the judgment in No. 4348 is to be made applicable to this new and different part of the cause of action. For the difference in scope between res judicata and estoppel by judgment see: Hanrick v. Gurley, 93 Tex. 458 at page 479, et seq., 54 S.W. 347, 55 S.W. 119, 56 S.W. 330; and other decisions cited herein.

(3) Estoppel by judgment operates on issues of fact and issues of law. The determination of the particular issue must have been essential to the support of the prior judgment. The particular issue must have been actually determined by the prior judgment, or else must have been necessarily involved in the determination made. The estoppel applies whether the issue is determined by agreement or by the tribunal to which it has been submitted. The determination made by the prior judgment need not have been right. The principle of estoppel by judgment has been applied to the location of land.

One or more of these rules of decision was applied in each of the following decisions: Hanrick v. Gurley, 93 Tex. 458, at page 479, et seq., 56 S.W. 330; State v. O'Connor, 96 Tex. 484, 73 S.W. 1041, Id., 96 Tex. 492, 74 S.W. 899; State of Texas v. Ortiz, 99 Tex. 475, 90 S.W. 1084; Houston Terminal Land Co. v. Westergreen, 119 Tex. 204, 27 S.W.2d 526; State v. Selby Oil & Gas Co., 135 Tex. 146, 139 S.W.2d 781; Landa v. Isern, 141 Tex. 455, 174 S.W.2d 310; Warren v. Houston Oil Co., Tex.Com.App., 6 S.W.2d 341; Southwestern Settlement & Development Co. v. May, Tex.Com.App., 235 S.W. 529; Tompkins v. Hooker, Tex.Civ.App., 200 S.W. 193; Carter v. Bacle, Tex.Civ.App., 94 S.W.2d 817.

(4) One of the issues made by the petition and by the proof of plaintiff's title in No. 4348 was the issue, where the land sued for by the plaintiff was located on the ground. As our preliminary statement shows, the plaintiff in No. 4348 sued for these tracts which, she alleged, were parts of a 1,400 acre tract in the southeastern corner of the Hanrick league. Two of three tracts, however, were so described that a comparison of the field notes of these two tracts with the field notes and description of the 1,400 acre tract in the petition and with the field notes and descriptions in plaintiff's chain of title did not show that the 1,400 acre tract or plaintiff's chain of title included any part of the other two tracts, and whether the 1,400 acres and plaintiff's chain of title did so or not could only be determined by admission or by evidence outside of said chain of title.

This issue of location on the ground was an issue of title; the burden was on the plaintiff in No. 4348 to prove that her chain of title to the 1,400 acres covered the three tracts for which she sued, and until she made this proof or the fact to be proved was admitted, she did not prove title to the land for which she sued. Freeman v. McAninch, 87 Tex. 132, 27 S.W. 97; Devine v. Keller, 73 Tex. 364, 11 S.W. 379.

(5) This a determination of the issue of location on the ground was essential to the judgment which was rendered in No. 4348; for this judgment awarded plaintiff title to the land sued for by her and it actually determined the issue of location in plaintiff's favor. That is, this judgment, as the description of the land awarded to the plaintiff shows, determined that the three tracts of land for which plaintiff sued in No. 4348 were within the boundaries of the 1,400 acre tract claimed by her just as she alleged in her petition.

The judgment in No. 4348, in fact, not only determined that the 1,400 acre tract included the three tracts for which the plaintiff sued; it also determined, and necessarily also, the location on the ground of some of the boundary lines of the 1,400 acres.

The only lines of the 1,400 acre tract which are mentioned in the judgment in No. 4348 are the eastern line and parts of the northern and southern lines running westward from the eastern line. These lines were fixed by the description of the second tract described in that part of the judgment awarding plaintiff a recovery against defendants other than the defendants Hughes; this tract, as described, is an irregularly shaped tract off the eastern end of the 1,400 acres, and it can be located on the ground, and thus these parts of the northern and southern lines of the 1,400 acres, and the eastern line of the 1,400 acre tract, can be located upon the ground as described in the judgment. As against defendants O. H. Gay, W. T. Collins and Harris Gay, who filed a joint answer and cross action, the title to this entire tract, including its location on the ground, were in issue; and the trial court had to locate these lines upon the ground in order to finally determine the questions of title to this tract which were at issue between the plaintiff and this group of defendants. The statement of facts in No. 4348 shows that O. H. Gay claimed title to all of the Romayor grant except the tract claimed by defendant W. H. Kelly; and Collins had a deed from Gay to an undefined tract of 200 acres which was to be selected by him upon the eastern line of the grant and located about his improvements. The evidence in No. 4348 did not show where Collins' improvements were located. Nor did the proof show the nature of defendant Harris Gay's claim.

The proof made in the case at bar shows that the 1,400 acres claimed by plaintiff did not cover all of the two tracts claimed in No. 4348 by the defendants J. H. and Henry H. Hughes, who, as we have shown, are in one of appellants' several chains of title. The northern line of the 1,400 acre tract as fixed in the judgment in No. 4348 apparently lies about 200 varas south of the northern line of the two Hughes tracts. Thus the location of the northern line of the 1,400 acre tract, and the location of the eastern line of the 1,400 acre tract were essential to the judgment as against the two defendants Hughes.

The Landers tract, which was the third tract awarded to plaintiff in No. 4348 was within the location claimed for the 1,400 acres either by plaintiff Bank or by appellants, and it may be that all the trial court had to do here was to determine that the 1,400 acre tract covered and included the Landers tract; and the judgment in No. 4348 means at least that. However, the proof made in the case at bar shows that the adjudication awarding plaintiff the tract claimed in No. 4348 by W. H. Kelly necessarily required the location of the western end of the south line of the 1,400 acre tract consistently with the location given the eastern end of that line of the 1,400 acre tract mentioned in the description of one of the tracts (the second) awarded to the plaintiff, namely, the tract off the eastern end of the 1,400 acres. The proof made in the case at bar shows that the Kelly tract actually lies in the southwestern corner of the 1,400 acres, as the 1,400 acres is fixed and described in the judgment under review, and also that the Kelly tract lies in the southwestern corner of the 1,400 acres as that corner would be located from the eastern lines and corners of the 1,400 acres which are described in the judgment in No. 4348. These two locations of the 1,400 acre tract do not coincide exactly, but the differences are small. The field notes of the Kelly tract called for the Hoover saloon building, and the map of plaintiff's surveyor Partlow located the center of the site of this building only 17 varas north of the south line of the 1,400 acres as it has been fixed in the judgment under review. Thus in practical effect that part of the judgment in No. 4348 which awarded the plaintiff the Kelly tract also fixed, and necessarily fixed, that part of the south line of the 1,400 acre tract which coincided with or which lies a very short distance from the south line of the Kelly tract.

This could not have been done without the trial court's having determined the location of the south line of the 1,400 acre tract either along its entire length or at least from the southeastern corner to the southwestern corner of the W. H. Kelly tract. For the issue was whether the 1,400 acre tract to which the plaintiff proved title covered the three tracts for which she sued; the statement of facts shows that her title was single and that the tract she owned was a unit. And as the facts related above show, the Kelly tract, awarded to the plaintiff because within her 1,400 acres, was at one end of the 1,400 acres and the other two tracts recovered by her were at the eastern end of the 1,400 acres. Thus the location of the south line of the 1,400 acres along that part of the 1,400 acres for which plaintiff Bank sues in the present suit but which was not involved in No. 4348, was determined in No. 4348, at least as far west as the southwest corner of the W. H. Kelly tract, and this determination was essential to the judgment in No. 4348. If this did not involve the entire south line of the 1,400 acres, it involved substantially the whole of that line.

■ The references which we have made to the statement of facts to identify the titles proved and the claims made by the parties, to the extent that we have referred to those titles and claims, was proper. For the evidence taken from the statement of facts shows what issues were litigated and did not contradict the record; and such evidence is admissible to identify such issues when it is not in conflict with the record. Freeman v. McAninch, supra.

(6) Under the rules of decision hereinbefore mentioned, concerning estoppel by judgment, plaintiff Bank can assert against appellants the location of the 1,400 acre tract fixed and determined in No. 4348.

(7) Appellants have argued that the issue of where the land sued for in No. 4348 was located was actually excluded by the trial court from the issues litigated in that cause. We do not so interpret the record in No. 4348, as the comments made by us in our preliminary statement show.

■ Appellants' contention also seems to involve an attack upon the judgment in No. 4348. For that judgment actually determined that the 1,400 acres covered the land in suit in No. 4348 and did fix and describe some lines and corners of the 1,400 acres; that is, the judgment did determine the issue which appellants say was excluded. This issue was made in the petition and the excerpts from the statement of facts upon which appellants rely to show the exclusion of the issue of location were not admissible to prove that point. Permian Oil Co. v. Smith, 129 Tex. 413, 73 S.W.2d 490, 107 S.W.2d 564, 111 A.L.R. 1152; New York and Texas Land Co. v. Votaw, Tex. Civ.App., 52 S.W. 125; McGrady v. Monks, 1 Tex.Civ.App. 611, 20 S.W. 959; Freeman v. McAninch, supra; Harrison v. Manvel Oil Co., 142 Tex. 669, 180 S.W.2d 909.

(8) Some discussion has been made of the fact that in describing the Landers tract the judgment in No. 4348 calls for the south line of the Landers tract to be in the south line of the "middle league". This "middle league" is the Hanrick league, and this call is only about 48 varas north of the south line claimed by the appellants for the south line of the Hanrick league. However, a consideration of the judgment alone is enough to show that this call was a mistake since the trial court disregarded it by awarding to the plaintiff in No. 4348 a tract off the eastern end of the 1,400 acres, which, as described in the judgment, extended 565 varas south of the south line of the Landers tract.

(9) The plaintiff has not located the 1,400 acres exactly in accordance with the lines fixed in the judgment rendered in No. 4348. Thus as we have stated the south line of the second tract awarded the plaintiff in No. 4348 (the tract off the eastern end of the 1,400 acres) appears to be a few varas south of the south line claimed for the 1,400 acres by plaintiff Bank and the north line appears to be a few varas south of the north line claimed for the 1,400 acres by plaintiff Bank. The judgment of the trial court, which adopted another theory of the plaintiff Bank's as to the location of these lines of the 1,400 acre tract, must

accordingly be reformed; but the variances between the location of the 1,400 acres as fixed in the judgment under review and in the judgment rendered in No. 4348 are slight.

We have considered the other points of error assigned by appellants but find no merit in any of them and all of them are overruled. In Point 5 appellants assign error to the refusal of the trial court to permit the amendment of his pleadings by appellant Withers so as to enable him to describe and sue for that part of the land sued for by plaintiff which was included within the inclosures of the defendant Morg Collins. The trial court did not abuse its discretion in refusing to permit the amendment. Points 6 and 7 assign error to the admission of testimony which tended to show the existence of a reputation concerning the location of the south line of the 1,400 acres. This testimony was immaterial under our adjudication of Points 1 and 2.

 Point 4 assigns error to the exclusion of the deed from Peter J. Menard to O. H. Gay, dated July 20, 1874. If there was any error in excluding this deed, the error was harmless. The document proved no title out of the sovereignty of the soil. The only foundation for a deed by Peter J. Menard conveying land in the Romayor grant was a conveyance of four leagues, from M. B. Menard to Peter J. Menard, dated July 21, 1840, almost 34 years prior to the deed from Peter J. Menard to O. H. Gay. This deed from M. B. Menard to Peter J. Menard was a conveyance in trust; the grantee was to sell the land for the purpose of paying certain specified debts of M. B. Menard. The deed from Peter J. Menard to O. H. Gay is not an exercise of this power; it purports to convey the entire six league Romayor grant for a recited consideration of $25. Further, the superiority of the title of the plaintiff bank to this claim of title under Peter J. Menard was determined adversely to appellants in No. 4348, and the decision was necessary to the judgment in that cause. Plaintiff Bank can assert that determination as res judicata, so far as the land recovered in No. 4348 is concerned, and can assert that determina-

tion as an estoppel by judgment as to the rest of the 1,400 acre tract. Appellants have argued that the deed from Peter J. Menard to O. H. Gay was admissible as a basis for a claim of limitation title but the evidence does not support this claim of limitation. Appellants' claim of limitation title is founded upon a possession of the defendant Morg Collins which began on December 25, 1928, according to the said Collins. In January, 1929, this Collins attorned to another person, W. T. Collins, who claimed to be a sort of general agent for O. H. Gay. The map of surveyor Boyles locates Collins' possession south of the location claimed by appellants for the 1,400 acres; so that if appellants are right about the location of the 1,400 acres, the possession of Morg Collins was not notice to plaintiff Bank and plaintiff Bank's predecessors in title of adverse claim to the 1,400 acres. Turner v. Moore, 81 Tex. 206, 16 S.W. 929. However, if plaintiff Bank has correctly located the 1,400 acres, and we have held that one of plaintiff's theories of location is enforcible, then Collins' possession is on the 1,400 acres but during practically all of the period of time that Morg Collins' possession has existed, the plaintiff Bank's predecessors in title have had a tenant on the 1,400 acres and Morg Collins knew this and made no objection. As a matter of fact, this tenant was the father of the said Morg Collins. The possession of Morg Collins was not inconsistent with, and was not in fact adverse to the possession of other persons on the Romayor grant east of the Trinity river. Thus the testimony of Morg Collins shows that he found "a good many" people living on that part of the grant east of the river and that he did not interfere with these people because "people were there before I got there." It must also be noted that in No. 4348 a predecessor in title of the plaintiff Bank actually recovered and that the plaintiff Bank now holds title to a part of the claim evidenced by Peter J. Menard's deed to O. H. Gay, and obviously no adverse possession of this land can be claimed under this deed by appellants, and it does not appear that Morg Collins had actual possession of any part of the land recovered in No. 4348.

286

Point 2 assigns error to the action of the trial court in instructing a verdict in behalf of appellee Racki. The argument under this point is that made under Points 1 and 2 and concerns only the issue of where the Hanrick league should be located. This matter of location was immaterial until appellant Withers had first proved a title against Racki. As our summary of the pleadings shows, Racki is a party to this appeal only in the capacity of a cross-defendant to the cross action of defendant Withers. Racki filed only defensive pleadings; the burden of proof was on Withers and the matter of where Withers' title was to be located could not become material until Withers had first proved a title. Withers simply did not make that proof, as our discussion of Point 4 shows.

The judgment of the trial court which is under review does not fix and locate the 1,400 acre tract as it is fixed and located in the judgment which was rendered in No. 4348. To the extent of the variance from the location of the 1,400 acres fixed in the judgment in No. 4348, the judgment of the trial court is set aside and judgment is here rendered in behalf of plaintiff Bank against appellants for the 1,400 acres in the southeastern corner of the Hanrick league, to be located, however, from the northeastern and southeastern corners of said tract as fixed in the judgment in No. 4348. The northern and southern lines of this tract will be parallel to the northern line of the Romayor grant and the tract will be of the dimensions stated in the trial court's judgment.

These comments adjudicate all of the points of error. Except to the extent required by the reformation of the description of the 1,400 acres which has just been made, the judgment of the trial court is affirmed.

On Motion for Rehearing

Appellants' motion for rehearing has been considered and is overruled.

Appellants have directed our attention to the fact that in Cause No. 4338 O. H. Gay dismissed his cross action. However, the copy of the docket sheet from which this statement is taken contains the entry that Gay "stands on his plea of not guilty," and Mrs. Davis' title to all of the land sued for by her was thus in issue between her and Mr. Gay.

Whether the proof adduced in No. 4338 fully supports the judgment actually rendered in that cause is not material here, since that judgment became final and was never set aside.